## C.H. RICH CO., INC.

### v.

## BOARD OF ENVIRONMENTAL PROTECTION.

Supreme Judicial Court of Maine.

Argued Oct. 30, 1989.

Decided Dec. 6, 1989.

William C. Reiff (orally), Mount Desert, for plaintiff.

Dennis Harnish (orally), Asst. Atty. Gen., Augusta, for defendant.

Before ROBERTS and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

We conclude that the Board of Environmental Protection applied the correct legal standard in deciding that replacement of a wharf currently supported by pilings with one supported by fill would unreasonably interfere with the natural flow of waters and would unreasonably harm wildlife and marine fisheries under the Coastal Wetlands Act, 38 M.R.S.A. § 474(1) (Pamph. 1987).[1] We therefore affirm the decision of the Superior Court (Hancock County, *McKinley, J.*), which affirmed the Board's denial of a permit to fill a coastal wetland.

C.H. Rich Co., Inc. operates a lobster and fish wharf in Bass Harbor in a group of buildings located on a wharf supported by pilings. Because of the age and condition of the pilings, delivery trucks cannot drive onto the wharf. Rich requested permission from the Department of Environmental Protection to fill a portion of the land under the existing wharf. The purpose was to strengthen the substructure so that trucks could drive onto the wharf and so that the wharf could support other improvements.

Finding that the project would unreasonably interfere with the natural flow of wa-

---

1. This version of the Coastal Wetlands Act was repealed in 1987 and has been recodified with changes not relevant to this appeal. 38 M.R.S.A. §§ 480–A—480–S (1989).

ters and unreasonably harm wildlife and marine fisheries, the Commissioner of Environmental Protection denied the application because Rich's purposes "could be accomplished using other methods of support with much less impact to the environment." The Board of Environmental Protection affirmed the Commissioner's decision by a divided vote and then denied the petition for reconsideration.

The Coastal Wetlands Act provides that an applicant must demonstrate to the Board's satisfaction "that the proposed activity will not ... unreasonably interfere with the natural flow of any waters; nor unreasonably harm wildlife or freshwater, estuarine or marine fisheries...." 38 M.R.S.A. § 474 (Pamph.1987).[2] Rich contends that the Board did not properly interpret the statutory standard of unreasonable harm or unreasonable interference because it did not balance any harm or interference against the benefit to Rich and society as a whole—in particular the reasonable, logical, commercial development of the area in question—and did not consider the cost of alternatives. Rich contends that it was prevented from presenting to the Board evidence that the cost of replacing the pilings would be substantially greater than the proposed fill project (perhaps $100,000 versus $10,000). In the absence of any record of the Board hearing and the evidence it received or excluded, however, we have no basis to evaluate the latter argument. We therefore confine ourselves to whether the Board's written decision reflects a correct application of the law.

The Board found that pile-supported construction is practicable for this project because the substrate in the project area is suitable for pilings and because trucks in the size range of 20 to 40 tons are driven onto pile-supported piers for loading in other Maine harbors. (In his initial decision the Commissioner found that "[t]his type of project is commonly accomplished in Maine by the use of pile-supported construction.") The Board concluded that there would be an unreasonable impact on wildlife or fisheries and an unreasonable interference with the natural flow of waters "based on the lack of justification for the project."

■■■■ Contrary to both Rich's and the Board's argument on appeal, the Board's decision clearly did involve some balancing of interests, and properly so under the statutory standard of reasonableness.[3] The Board's finding of "lack of justification for the project" because of the "suitability" of the alternative of pile-supported construction reflects that balancing and implicitly weighs the costs of piling construction. We agree with the Board, however, that the statute does not require it to weigh the financial ability of a particular applicant in making its decision as to what is practicable or reasonable. In the absence of any record of what took place at the Board hearing we are not persuaded that it meant anything more than that in its statement that it had no mechanism to consider cost-comparison.[4] The Board was not com-

**2.** DEP Regulations implementing the statutory provision concerning unreasonable interference with the natural flow of waters provide that in evaluating an application, the Board will consider whether "pile-supported construction rather than crib-type or solid fill construction will be utilized to the fullest extent practicable." Me. Dep't of Envt. Protection Reg.Ch. 345, § 1(A)(5) (Nov. 1, 1979).

**3.** There is a parallel in another piece of environmental legislation. In the Maine Pesticide Control Act of 1975, "unreasonable adverse effects on the environment" are defined as "any unreasonable risk to man or the environment, taking into account the economic, social and environmental costs and benefits of the use of any pesticide." 7 M.R.S.A. § 604(32). The standard of reasonableness is to be contrasted with the

standard under review in *Swift River v. BEP,* 550 A.2d 359, 359–61 (Me.1988), which prohibited any development that "diminished the significant resource values of the river or stream segments." That standard, unlike the standard of reasonableness, did not require any balancing.

**4.** The Board's findings reflect that it understood Rich's challenge to be that "pile-supported construction would be considerably more expensive than the stone-filled embankment and the C.H. Rich Co. cannot afford the greater expense." In its brief on appeal, Rich characterized the situation in a similar fashion: "having compared the costs and settling on the fill as being the only alternative that Rich could afford, Rich filed an application with the DEP...." Certainly the BEP is not required to lower the standard for

pelled to conclude that, merely because repairs and strengthening might be achieved more economically by filling, pilings could no longer be used for the ordinary commercial development of the area. After all, the Company's operations are currently and for many years have been conducted on a wharf supported by pilings as is frequently the case elsewhere in coastal Maine. The Board's decision that using fill support would "unreasonably interfere with the natural flow of any waters" and "unreasonably harm wildlife ... or marine fisheries" was therefore not arbitrary, capricious or an abuse of discretion. 5 M.R.S.A. § 11007(4)(C)(6) (1979); 38 M.R.S.A. § 474(1) (Pamph.1987).[5]

The entry is: Judgment affirmed.

All concurring.

---

permits because of a particular applicant's financial difficulties.

**5.** Since we do not have the hearing record, we cannot evaluate the argument that the Board's

decision was not supported by substantial evidence on the whole record. 5 M.R.S.A. § 11007(4)(C)(5) (1979).