2003 ME 62

CONSERVATION LAW FOUNDATION, INC., et al.

v.

DEPARTMENT OF ENVIRONMEN-TAL PROTECTION et al.

Supreme Judicial Court of Maine.

Argued: Sept. 9, 2002.
Decided: April 29, 2003.

Peter Shelley (orally), Conservation Law Foundation, Rockland; Gregory M. Cunningham (orally), Jeffrey A. Thaler, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for Charles and Constance Gagnebin, plaintiffs.

G. Steven Rowe, Attorney General, Gerald D. Reid, Asst. Attorney General (orally), Augusta; James T. Kilbreth (orally), Jacqueline Rider, Robert E. Cleaves, Verrill & Dana, LLP, Portland, for Edward Johnson, for defendant.

Edmond J. Bearor, Rudman & Winchell, LLC, Bangor; Christine Hughes, New England Legal Foundation, Boston, MA, for amicus curiae New England Legal Foundation.

Panel: CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Edward C. Johnson IV appeals from a judgment of the Superior Court (Kennebec County, *Atwood, J.*) invalidating a permit issued by the Department of Environmental Protection (DEP)[1] that allowed Johnson to build a dock on waterfront property in the Town of Mount Desert. Acting on petitions brought by the Conservation Law Foundation (CLF) and abutters Charles Gagnebin III and Constance Gagnebin, the court also declared invalid the Board of Environmental Protection (BEP) regulation under which Johnson's permit was issued, 06–096 CODE ME. R. ch. 305, § 13 (1995). We conclude that the challenged rule and Johnson's permit are valid, and we vacate the judgment.

---

**1.** The Department of Environmental Protection is the executive agency charged with the protection of Maine's natural resources. 38 M.R.S.A. § 341–A(1) (2001). The Board of Environmental Protection is responsible for rulemaking proceedings, ruling on certain permit applications, appeals from the grant or denial of permits and licenses by the DEP Commissioner, and the revocation of licenses. *Id.* §§ 341–B, 341–D, 344(2–A).

## I. STATUTORY AND REGULATORY BACKGROUND

### A. NRPA

[¶ 2] The Natural Resources Protection Act (NRPA), 38 M.R.S.A. §§ 480–A to 480–Z (2001 & Supp.2002), is a statutory scheme whose purpose is the protection of Maine's rivers, ponds, wetlands, mountains, wildlife habitats, and coastal sand dunes. *Id.* § 480–A (2001). It is administered by the DEP. NRPA prohibits certain activities, including the construction of permanent structures in protected areas, unless a permit has been issued by the DEP. *Id.* § 480–C(2)(D). NRPA contains various standards that an applicant for a permit must meet in order to obtain a permit from the DEP. One is the requirement that the proposed activity "will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." *Id.* § 480–D(1).

[¶ 3] The usual means of obtaining a permit from the DEP for the construction of a structure is to file an application which the DEP processes. *Id.* § 344. Processing includes notice to the public and the solicitation of comments from the public. *Id.* § 344(1). The DEP then makes a decision to approve the permit, sometimes with conditions, deny it, or refer it to the BEP for a decision. *Id.* § 344(2–A).

### B. Permit by Rule

[¶ 4] The BEP has the statutory authority to allow permitting for certain activities to bypass the individual application route; this is known as permit by rule. The statute granting permit by rule authority to the BEP is found at 38 M.R.S.A. § 344(7):

The Board of Environmental Protection may permit, by rule, any class of activities that would otherwise require the individual issuance of a permit or approval by the board, if the board determines that activities within the class will have no significant impact upon the environment. Any such rule must describe with specificity the class of activities covered by the rule and may establish standards of design, construction or use as may be considered necessary to avoid adverse environmental impacts.

The BEP first promulgated regulations pursuant to this statute in 1989.

### C. Rule 13

[¶ 5] The regulation at issue in this case, 06–096 CODE ME. R. ch. 305, § 13 (1995), referred to as Rule 13, was promulgated pursuant to section 344(7). It is found within chapter 305 of the DEP rules, which is the chapter containing the permit by rule regulations for various activities regulated by the DEP that require NRPA permits. Rule 1 of chapter 305 is a general rule applying to all of the activities contained in the chapter.

[¶ 6] Rule 13 was first adopted in 1992 after the BEP held hearings and received public comments. Minor amendments were made to Rule 13 in 1995, following a rule-making proceeding in which other amendments to chapter 305 were made, including amendments to Rule 1. The 1995 version of Rule 13 is at issue in this case.[2]

[¶ 7] By its terms Rule 13 "applies to the construction or expansion of pile supported piers and wharves and installation of pilings in coastal wetlands." 06–096 CODE ME. R. ch. 305, § 13(A)(1). These are activities that require a permit pursuant to NRPA. 38 M.R.S.A. § 480–C (2001 &

**2.** Although the rule was originally, and is currently, numbered as Rule 14, we refer to it as Rule 13 because that was its designation in the 1995 version relevant to this case. Subsequent amendments to Rule 13 are not applicable to Johnson's 1998 permit.

Supp.2002). "Coastal wetlands" are defined as all tidal and subtidal lands including other contiguous land subject to tidal action. *Id.* § 480–B(2) (2001).

[¶ 8] The practical effect of the permit by rule process and Rule 13 is that the builder of a pier or wharf that meets the standards and requirements of the rule may be granted a permit to construct it without going through an individual application process.[3] The applicant files a notice of the structure on a form provided by the DEP. 06–096 CODE ME. R. ch. 305, § 1(B) (1995). Unless the DEP notifies the applicant within fourteen days after the filing of the notice that it has denied the permit or otherwise contacts the applicant, the applicant may commence the activity.[4] *Id.* § 1(C)(1). The process of obtaining a permit by rule is easier and speedier than the individual application process.

[¶ 9] Rule 13 sets forth several standards for piers and wharves including size and materials. Noncommercial private piers and wharves are limited to a width of six feet and to the minimum size necessary for their purpose. *Id.* § 13(B)(8). With the exception of attached temporary ramps and floats, the piers and wharves cannot extend beyond the low water line. *Id.* Also, they cannot extend across more than twenty-five percent of any channel at mean low water or into a designated federal channel. *Id.* § 13(B)(9). There are minimum setback requirements, and use of treated wood and uncured concrete is limited. *Id.* § 13(B)(10)–(13). Rule 13 contains construction limitations over marsh vegetation, and piers and wharves are not

allowed in identified wildlife habitats. *Id.* § 13(B)(5), (6). The applicant must submit photographs of the area with the notice and must send photographs of the finished project after completion of the construction. *Id.* § 13(B)(1), (2). The applicant must also obtain any required permits from the Bureau of Public Lands and the United States Army Corps of Engineers. *Id.* § 13(B)(3), (4).

[¶ 10] As noted above, Rule 13 was first promulgated in 1992. The rule-making record for Rule 13, as well as 1992 amendments to regulations governing other activities, contains the transcript of the public hearing; written comments from various individuals, entities and governmental agencies; and the DEP's response to comments and testimony. At the public hearing there was a general recognition, by both proponents and opponents, of the pressure placed on the DEP to streamline the permitting process and to add more activities to the list of those that could be permitted by rule. The DEP staff presentation at the public hearing recited that "[t]he main reason why the regulations are being modified at this time is to expand jurisdiction in order to free up more staff time." The staff member added: "We believe we have identified activities that are of minor environmental impact and we believe it will free up more staff time." Proponents and opponents recognized the permit by rule process as expedient for people seeking permits and also expedient for the DEP because it did not have sufficient staff to process applications.

---

3. The permit by rule process bears some similarity to the Nationwide Permits issued by the United States Army Corp of Engineers, 33 C.F.R. §§ 330.1–330.6 (2002), under the authority of section 404 of the Clean Water Act, 33 U.S.C.A. § 1344 (2001), and other federal statutes.

4. Fourteen days is the time period in Rule 1. There is a different time period in the statute, 38 M.R.S.A. § 344(2–A)(B), but this apparent inconsistency is not at issue here.

[¶ 11] There was very little in the way of comments and testimony about Rule 13 itself; other permit by rule regulations received more discussion. The DEP staff representative testified that the rule "will save us a lot of staff time because we do process a lot of these applications each year." There was one comment that Rule 13 was too restrictive because it did not allow structures in emergent marsh wetlands. The DEP's response was that these wetlands were among the most productive and relatively rare, and the cumulative effects of construction could significantly impact them; therefore, individual applications were appropriate.

[¶ 12] Other commentators recommended a specific length for piers and wharves, indicating that the twenty-five percent of width of channel standard was too lenient. The DEP's response was that the variability of tides along the coastline makes a maximum length limitation too restrictive to let people take advantage of the permit by rule. The DEP also responded that the costs of construction and the length of vessels intended to use the piers and wharves were sufficient limiting factors to the length of the piers and wharves. The DEP noted that the twenty-five percent limitation was based on United States Army Corps of Engineers' requirements and concluded in its comment that the twenty-five percent limitation would "insure safe channel use."

[¶ 13] Rule 13 was amended in 1995, but the parties have supplied none of the 1995 rule-making record. The 1995 version of Rule 1 states:

A "permit by rule" or "PBR" is an approval for a type of activity described in this chapter. A PBR activity will not significantly affect the environment if carried out in accordance with this chapter, and generally has less of an impact on the environment than an activity requiring an individual permit. A permit by rule satisfies the Natural Resources Protection Act (NRPA) permit requirement and Water Quality Certification requirement.

This language was not in the previous version of Rule 1. The 1992 version of Rule 13 stated that the standards in the rule were "designed to insure that piers, wharves and piling projects will not unreasonably interfere with existing scenic, aesthetic or navigational uses," 06–096 CODE ME. R. ch. 305, § 14(C)(1) (1992), but this statement does not appear in the 1995 version of Rule 13. The actual standards in Rule 13 were changed only minimally by the 1995 amendments.

## II. PROCEDURAL BACKGROUND

[¶ 14] In late April 1998, on Johnson's behalf and pursuant to Rule 13, a contractor filed the appropriate form with the DEP for the construction of a pile-supported dock on Bartlett Narrows in Mount Desert. The DEP approved the permit on May 4, 1998. Although the permit by rule process does not require notification to abutters or others, the DEP notified Johnson's neighbors and others of the permit approval and provided written information about appealing DEP permits to the BEP.

[¶ 15] Shortly thereafter, CLF filed a petition with the Superior Court seeking to review Johnson's permit. In the meantime the Gagnebins appealed the permit to the BEP. The BEP denied the appeal, and the Gagnebins filed a petition in the Superior Court to review the permit. Johnson intervened as a respondent in both actions, which were consolidated.

[¶ 16] The Superior Court held that Rule 13 was invalid because the BEP exceeded its authority in promulgating the rule and because the rule was arbitrary, capricious, an abuse of discretion and contrary to law. The court also held that Johnson's permit,

issued under Rule 13, was invalid. It remanded the matter to the BEP for further rule-making but later granted the DEP's motion to amend the judgment and deleted the order of remand.

[¶ 17] After judgment, CLF and the Gagnebins sought an injunction ordering Johnson to remove the dock that he built in 1999 pursuant to the Rule 13 permit, but the court denied the request on the ground that there was no private right of action to enforce NRPA. The court denied Johnson's post-judgment motion to amend the judgment regarding the invalidity of his permit. Johnson, CLF and the Gagnebins all filed notices of appeal. The DEP now takes no position on the validity of the 1995 version of Rule 13, which is no longer in effect because it was superseded by later amendments.

### III. VALIDITY OF RULE 13

[¶ 18] Before reaching the merits of the validity of Rule 13, we address Johnson's contention that CLF and the Gagnebins cannot challenge the rule's validity because their petitions purport to challenge final agency action. Johnson argues that CLF and the Gagnebins could have sought review of final agency action under the Administrative Procedure Act (APA), 5 M.R.S.A. § 11001 (2002), or review of agency rule-making under that same Act, *id.* § 8058, but they could not seek review of both in the same proceeding. This is an unnecessarily narrow view of the procedures afforded by the APA.

[¶ 19] When an agency enacts a rule pursuant to its rule-making authority, persons aggrieved thereby are entitled to challenge the rule through a declaratory judgment action. *Id.* When an agency acts in its adjudicatory role and makes a deci-sion affecting the rights, duties, or privileges of specific persons, an aggrieved person can challenge that decision by filing a petition for review with the Superior Court. *Id.* §§ 11001(1), 11002; M.R. Civ. P. 80C.[5] A person aggrieved by final agency action, stemming from an agency's adjudicatory role in which the agency has applied an agency regulation, may challenge both the agency action and the validity of the rule in the Superior Court action. *See, e.g., Jackson v. State,* 544 A.2d 291, 295 & n. 5 (Me.1988). In the instant case CLF and the Gagnebins were entitled to challenge the action of the DEP in issuing Johnson's permit as well as the regulation pursuant to which the permit was issued.

[¶ 20] Although the initial pleadings in this case are both entitled "Petition to Review Final Agency Action" and were brought pursuant to Rule 80C and 5 M.R.S.A. § 11001, CLF and the Gagnebins are not limited to challenging only the issuance of the permit. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife,* 550 A.2d 56, 64 (Me. 1988) (holding, in case brought under Rule 80C and 5 M.R.S.A. § 11001, that rule changes were void as not promulgated in compliance with rule-making requirements of the APA). We reject Johnson's argument that an agency regulation can be challenged only in a declaratory judgment action or an enforcement action. The APA itself specifically provides that a rule may be challenged in any civil or criminal action. 5 M.R.S.A. § 8058(2); *Jackson,* 544 A.2d at 295 n. 5. The petitions in this case challenged the validity of Rule 13, and requested an order invalidating the rule. The Superior Court did not err in allowing the petitioners to challenge the validity of Rule 13.

---

**5.** A petition for review may be used also to challenge the adoption of a rule. *See Cumber-* *land Farms N., Inc. v. Me. Milk Comm'n,* 428 A.2d 869, 873 (Me.1981).

## A. Standard of Review

[¶ 21] The standard of review for a challenge to the validity of a rule, whether raised in a declaratory judgment action or a Rule 80C petition, is contained in 5 M.R.S.A. § 8058(1).[6] *See Cumberland Farms N., Inc. v. Me. Milk Comm'n*, 428 A.2d 869, 873 (Me.1981). If the rule exceeds the rule-making authority of the agency, it is invalid. 5 M.R.S.A. § 8058(1). If a rule does not exceed the rule-making authority, the court next reviews "any other procedural error" related to the promulgation of the rule. *Id.* No other procedural errors are claimed in this case. Finally, if the rule is procedurally correct and within the agency's rule-making authority, it is reviewed substantively "to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.*

[¶ 22] The Superior Court determined that Rule 13 was invalid because it exceeded the rule-making authority of the BEP and was arbitrary, capricious, an abuse of discretion and contrary to the public trust doctrine. We do not accord deference to the Superior Court's determination, *see DeMello v. Dep't of Envtl. Prot.*, 611 A.2d 985, 986 (Me.1992), but we directly review the rule and the rule-making record to determine whether the rule exceeds the BEP's statutory authority or is arbitrary or contrary to law, *see Cumberland Farms*, 428 A.2d at 874.

[¶ 23] Whether the BEP exceeded its statutory authority or violated other statutes in promulgating Rule 13 is an issue of statutory interpretation. When a statute or statutory scheme is unambiguous, we ascertain the intent of the Legislature from the plain language. *Guilford Transp. Ind. v. Pub. Utils. Comm'n*, 2000 ME 31, ¶ 11, 746 A.2d 910, 913. When there is ambiguity, however, we defer to the interpretation of a statutory scheme by the agency charged with its implementation as long as the agency's construction is reasonable. *See id.* A particular statute is not reviewed in isolation but in the context of the statutory and regulatory scheme. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Furthermore, if the Legislature's intent is not expressed unambiguously and the interpretation of the statutory scheme involves issues that are within the scope of the agency's expertise, then the agency's interpretation must be given special deference. *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261.

## B. BEP's Rule-making Authority

[¶ 24] The BEP has general rule-making authority pursuant to 38 M.R.S.A. § 341–D(1–B) (2001) to adopt rules "for the interpretation, implementation and enforcement of any provision of law that the department is charged with administering." One of the provisions of law within the authority of the DEP is NRPA, *id.*

---

**6.** Section 8058(1) provides, in part:

Insofar as the court finds that a rule exceeds the rule-making authority of the agency, or is void under section 8057, subsection 1 or 2, it shall declare the rule invalid. In reviewing any other procedural error alleged, the court may invalidate the rule only if it finds the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred. If the court finds that the rule is not procedurally invalid and not in excess of the agency's rule-making authority, its substantive review of that rule shall be to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

§§ 480–A to 480–Z (2001 & Supp.2002). NRPA requires permits for certain activities, including the construction of piers and wharves. *Id.* § 480–C (2001 & Supp.2002). In addition to its general rule-making authority, section 344(7) authorizes the BEP to "permit, by rule," activities that would otherwise require individual permits. Rule 13 was adopted pursuant to this express authority. It comes within the ambit of section 344(7) because it concerns the construction of structures in coastal wetlands, an activity that requires a permit and an activity that the BEP determined will have no significant impact. We conclude that the BEP had the authority, under the specific grant of rule-making power for permits by rule in section 344(7), to adopt Rule 13.

[¶ 25] Although CLF and the Gagnebins argue that the BEP exceeded the scope of its rule-making authority in adopting Rule 13, they contend it is because the rule allows for the construction of docks without a consideration of the NRPA standards. This argument, that Rule 13 is contrary to the provisions of NRPA, is a substantive challenge to the rule.

## C.   Contrary to Law

### 1.   NRPA

[¶ 26] Having determined that Rule 13 is not beyond the power of BEP and there being no other procedural challenge to the enactment of the rule, we turn to the major contention of CLF and the Gagnebins, that Rule 13 is substantively invalid because it is contrary to the provisions of NRPA. CLF and the Gagnebins also challenge whether Rule 13 meets the section 344(7) requirement of "no significant impact upon the environment," but they do so in the context of their argument that Rule 13 is arbitrary and capricious, an argument that is discussed *infra*.

[¶ 27] CLF and the Gagnebins contend that Rule 13 violates section 480–D(1) of NRPA, which requires that any permitted activity not "unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." Johnson argues that the BEP has determined that piers and wharves meeting Rule 13 standards will have no significant impact on the environment, and, therefore, those piers and wharves do not need to meet the NRPA standards. Alternatively, he argues that the BEP's finding of no significant impact is equivalent to a determination that the permitted activity will not unreasonably interfere with existing uses.

[¶ 28] We first analyze whether Rule 13 must comply with the NRPA provisions in order to be valid. As we stated above, section 344(7) is the source of authority for the promulgation of a permit by rule regulation for the construction of piers and wharves in coastal wetlands. There is no language in section 344(7) that either allows the BEP to disregard NRPA in the permit by rule regulations or that expressly requires the regulations to comply with NRPA. The silence of section 344(7) in this regard creates an ambiguity as to whether regulations enacted pursuant to section 344(7) must comport with NRPA or can allow for permits for activities that do not strictly comply with NRPA standards.

[¶ 29] Because of this ambiguity, we look to the interpretation of the agency charged with administering NRPA and section 344(7). We start with the 1992 version of Rule 13 to ascertain the BEP and DEP's interpretation.

[¶ 30] The 1992 version stated that the standards in the rule were "designed to insure that piers, wharves and piling projects will not unreasonably interfere with existing scenic, aesthetic or navigational uses." This is identical to the NRPA language in section 480–D(1) except

for the omission of the word "recreational." This quoted language is not found in the 1995 version of Rule 13. However, a similar statement was placed in the 1995 version of Rule 1, which applies to Rule 13 activities. Furthermore, the Rule 13 standards are almost identical in the 1992 and the 1995 versions. Because the 1992 standards were designed to insure no unreasonable interference with existing uses, the 1995 standards were likewise designed to insure no unreasonable interference. We conclude the DEP and BEP designed Rule 13 to conform to NRPA and that they construe section 344(7) to mean that Rule 13 was required to conform to NRPA. Because this is a reasonable construction of a statute by the agency that administers it, we defer to its construction.

[¶ 31] Whether Rule 13 actually meets NRPA requirements is the next question. In answering this question we rely on the agency's expertise. The DEP, as the agency charged with protecting Maine's natural resources, has been entrusted by the Legislature with extensive responsibilities and is expected to have the expertise to carry out those duties, including knowledge of the general uses of the natural resources. In recommending to the BEP the adoption of regulations, the DEP is expected to exercise its expertise as is the BEP in promulgating regulations. When an agency utilizes its expertise in setting policy, as long as it does not contravene its statutory authority, we defer to its policy determinations. *See, e.g., C.H. Rich Co. v. Bd. of Envtl. Prot.,* 567 A.2d 69, 70–71 (Me.1989) (upholding the BEP's denial of wharf replacement permit in which BEP utilized its knowledge of construction of wharves and flow of waters). In recommending and promulgating Rule 13 the DEP and the BEP exercised their respective expertise, including their knowledge of the uses of the coastal wetlands, to set the standards for piers and wharves that would not unreasonably interfere with existing uses and have no significant impact on the environment.

[¶ 32] CLF and the Gagnebins have suggested several ways in which Rule 13 does not insure that there will be no reasonable interference with existing uses. For example, with regard to the impact of a proposed pier or wharf on existing scenic or aesthetic uses, they argue that there is no Rule 13 standard that can insure no unreasonable interference. However, the requirement of photographs of the area appears designed to meet this very standard.[7] Indeed, photographs are a means of insuring compliance with this NRPA standard for individual permits as well as permits by rule. *See* 06–096 CODE ME. R. ch. 310, § 9(B)(4) (2002). We defer to the expertise of the DEP and the BEP, and their assessment that the submission of photographs of the area is a reasonable means of demonstrating the existing scenic and aesthetic uses. The photographs when combined with the submission of the project design plan allow the DEP official who reviews the notification form submitted by the applicant to determine if the proposed project is questionable as to whether it will interfere with existing uses. If the photographs and the design demonstrate that the proposed dock will unreasonably interfere with existing scenic and aesthetic uses, the DEP can deny the Rule 13 permit or contact the applicant with concerns. *See id.* ch. 305, § 1(C)(1) (1995).

[¶ 33] There is no standard in Rule 13 that, on its face, takes into consid-

---

7. Rule 13(B)(1) provides: "Applicants are required to submit photographs of the area in which this activity is proposed."

eration the recreational uses of the location in which the pier or wharf is to be constructed. Even the statement in the 1992 version referring to other scenic, aesthetic or navigational uses omitted the term "recreational." However, we think that it is reasonable to defer to the knowledge of the DEP and the BEP of the recreational uses that are made in the coastal wetlands in the locations in which Rule 13 piers and wharves can be constructed.[8] Probably the most common recreational use is boating, and that use is considered in the standards that are concerned with navigation. Another likely recreational use is fishing, and we think it is reasonable to assume that the DEP and the BEP have knowledge of the general recreational fishing use of the areas and concluded that such use would not be interfered with by Rule 13 docks.

[¶ 34] CLF and the Gagnebins also argue that the Rule 13 standard restricting the structure to twenty-five percent of the channel does not accomplish the purpose of insuring no unreasonable interference with existing navigational uses because the limitation is meaningless without knowledge of the existing navigational uses of the particular channel. Again, we conclude that it is reasonable to defer to the expertise of the DEP and the BEP and their knowledge of the general navigational uses. Furthermore, the restriction to twenty-five percent of the channel is not the only restriction connected to navigational uses. Under Rule 13, the pier or wharf itself cannot extend beyond the low water mark, and it is only temporary ramps and floats that can extend up to twenty-five percent of the channel. The size of the pier or wharf is limited "to the minimum size necessary to accomplish [its] purpose,"[9] and it cannot be more than six feet in width. 06–096 CODE ME. R. ch. 305, § 13(B)(8) (1995). It is reasonable to defer to the expertise of the DEP and the BEP concerning the construction of piers and wharves and their knowledge as to how factors such as cost will impose inherent limitations on the size of docks.

[¶ 35] CLF and the Gagnebins essentially contend that the entire permit by rule process is inconsistent and incompatible with NRPA because it is impossible to assess the impact of any pier or wharf on existing uses without an individualized review of those uses and the particular dock. However, NRPA standards can be met by narrowly drawn regulations without the requirement of individualized permits. In fact, these regulations may better insure compliance with NRPA than an individualized permit because they are more narrowly drawn than the broader criteria of the NRPA statutes and regulations that govern individual permits. Furthermore, to the extent that a proposed dock, in spite of the requirements of Rule 13, appears to violate NRPA, the DEP has the opportunity, albeit within a short time period, to review the applicant's notice and deny or question it. This ability means that for those presumably rare instances in which the Rule 13 standards may be insufficient to insure that the proposed dock meets the NRPA standards, the DEP can deny the permit. For all of the foregoing reasons we conclude that Rule 13 is not invalid on the ground that it fails to comply with NRPA.

---

**8.** Recreational activities of the public on privately-owned intertidal land are limited to fishing, fowling and navigation, *Bell v. Town of Wells*, 557 A.2d 168, 173 (Me.1989), or other activities with the permission of the landowner.

**9.** This particular restriction on dock size is a common one in municipal ordinances. *See Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 4, 797 A.2d 27, 29; *Lentine v. Town of St. George*, 599 A.2d 76, 77 & n. 2 (Me.1991).

### 2. Public Trust Doctrine

[¶ 36] CLF and the Gagnebins argue that Rule 13 is contrary to law in that it violates the public trust doctrine because it does not protect the public's rights. The public trust doctrine means, for the owner of coastal property, that the owner's property rights in the intertidal zone are subject to the public's rights to fishing, fowling and navigation. However, the public's rights in these activities have always been subject to the owner's "right to wharf out to the navigable portion of the body of water." *Great Cove Boat Club v. Bureau of Pub. Lands,* 672 A.2d 91, 95 (Me.1996). The right of the land owner to construct a wharf to the navigable water is subject to reasonable regulation, *id.* (citing *Whitmore v. Brown,* 102 Me. 47, 56, 65 A. 516, 520 (1906)), and Rule 13 is reasonable regulation. The public trust doctrine does not invalidate Rule 13.

### D. Arbitrary, Capricious, and Abuse of Discretion

[¶ 37] CLF and the Gagnebins contend that Rule 13 is invalid because it is arbitrary, capricious, and an abuse of discretion. They argue that the arbitrariness is apparent from the lack of competent support, in the rule-making record, for the BEP's determination that the activity will have no significant impact on the environment and that the standards will insure no unreasonable interference with existing uses. They contend, for example, that there is no evidence in the record that a dock that extends up to twenty-five percent of the channel will not unreasonably interfere with existing navigational uses. They also note the lack of evidence in the rule-making record as to the potential number of projects that could be permitted by rule and the lack of a study on the cumulative impacts to navigation or recreation that might occur under the rule.

[¶ 38] In asserting that the BEP acted arbitrarily and capriciously, CLF and the Gagnebins have the burden to demonstrate the unreasonableness of the BEP in enacting Rule 13. Regularity of the action of an administrative agency in enacting rules is presumed. *See Cent. Me. Power Co. v. Waterville Urban Renewal Auth.,* 281 A.2d 233, 242 (Me.1971). The agency is assumed to have acted "with full knowledge of material facts and in justification thereof." *Id.* To overcome the presumption of regularity and demonstrate arbitrariness, CLF and the Gagnebins must show that Rule 13 is unreasonable, lacks a factual basis, or lacks support in an evidentiary record. *Id.*

[¶ 39] CLF and the Gagnebins argue that they have met their burden because the BEP did not explain why each standard in Rule 13 was useful for or necessary to its determination that the statutory requirements of NRPA could be met through a permit by rule. In making this argument CLF and the Gagnebins misconstrue their burden. It is not up to the BEP to explain the reasonableness of its action. Neither the APA nor the rule-making statutes applicable to the BEP require an explanation in the record. Therefore, the lack of such an explanation does not itself demonstrate unreasonableness.

[¶ 40] We are not persuaded that the BEP acted unreasonably in promulgating Rule 13. As we have already noted, Rule 13 comports with NRPA and is not otherwise contrary to law. It simply provides a more expedient method of obtaining permits for the construction of piers and wharves than the individual permitting process. The permit by rule process is one supported and encouraged by the Legislature as is seen in the requirement in section 344(7) for the DEP to annually review activities to see if more can be

added to the permit by rule process. A rule that is authorized by statute, encouraged by the Legislature, does not violate other laws, and provides a simpler and more efficient means to obtain permits is not unreasonable.

[¶ 41] We also conclude that CLF and the Gagnebins have failed to demonstrate that the record lacks a factual basis for its findings that the Rule 13 piers and wharves will have no significant impact on the environment and will not unreasonably interfere with existing uses. CLF and the Gagnebins specifically argue that the rulemaking record lacks a factual basis for the BEP's conclusion that dock structures extending into twenty-five percent of a channel will have no significant impact. However, the record demonstrates that the twenty-five percent limitation was based on requirements of the United States Army Corps of Engineers. Thus, there is a factual basis in the record for this particular length limitation. The only other factual inadequacy of the record specifically argued by CLF and the Gagnebins is the lack of any study demonstrating the cumulative effect on the environment and existing uses of the number of piers and wharves expected to be built pursuant to Rule 13. However, there is no requirement that such a study be done before a rule can be promulgated. If the rule had an unintended consequence, the DEP or interested citizens could initiate a rulemaking proceeding to change the rule.

[¶ 42] For reasons that we have already stated, the BEP was entitled to rely upon its knowledge of piers and wharves and existing uses to fashion standards that would allow construction with no significant impact or unreasonable interference. Furthermore, the regulation allows for a denial of a permit in those instances in which the DEP determines that the proposed dock will violate NRPA in spite of complying with the Rule 13 standards. Thus, we conclude that the BEP did not act arbitrarily or capriciously or abuse its discretion.

### E. "Equally Effective" Requirement

[¶ 43] CLF and the Gagnebins also contend that Rule 13 is invalid because the "equally effective" requirement of 5 M.R.S.A. § 8062 (2002) has not been met.[10] Section 8062 requires that performance standards adopted by an agency to implement a statute must be "equally effective in meeting applicable statutory criteria." The BEP considers Rule 13 to contain "performance and use standards" adopted pursuant to 38 M.R.S.A. § 480–H (2001).

[¶ 44] The petitioners claim that the standards of Rule 13 are ineffective in meeting NRPA requirements. We defer, however, to the BEP's determination that the Rule 13 standards for the permits by rule for wharf construction are equally effective in meeting the statutory standards. Furthermore Rule 1 allows the DEP to deny a permit in the event the notice and accompanying documents demonstrate noncompliance. In fact, as we have noted, because the Rule 13 standards put specific limitations on docks they may be more effective than the less precise statutory standard of no unreasonable interference

---

10. Section 8062 states:

When legislation authorizing any regulated activity requires that certain criteria be met in order that any license, permit, authorization or certification to undertake the regulated activity be granted and when an agency determines that performance standards will assist regulated parties in complying with the criteria, the standards shall be developed during the rule-making process and incorporated into adopted rules when performance standards are equally effective in meeting applicable statutory criteria.

with existing scenic, aesthetic, recreational or navigational uses.

[¶ 45] Because we conclude that Rule 13 is valid, and because neither CLF nor the Gagnebins have challenged Johnson's permit on any basis other than the invalidity of Rule 13, we do not reach the remaining issues raised by the parties.

The entry is:

Judgment vacated. Remanded for entry of judgment affirming the decisions of the BEP and DEP.