STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-22-188

CHRIS CALNAN et al.,

     Plaintiffs,

  v.

SAM HURLEY, in his official role as
Maine Emergency Medical Services
Director,

   and

MAINE EMERGENCY MEDICAL
SERVICES,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PENDING MOTIONS**

Plaintiffs Calnan *et al.* (collectively "Plaintiffs") have filed this declaratory judgment action against Defendant Sam Hurley, in his official capacity as Director of Maine Emergency Medical Services, as well as Maine Emergency Medical Services (collectively, "Defendants"). For relief, Plaintiffs seek to invalidate a rule promulgated by the Maine Emergency Medical Services Board ("MEMS Board") imposing certain vaccination requirements on EMS workers. Before the court are two dispositive motions: (1) Defendants' motion to dismiss and (2) Plaintiffs' motion for summary judgment. Also pending are Plaintiffs' motion for leave to amend their statement of material facts and Plaintiffs' motion to exempt the parties from the ADR process.

## BACKGROUND

The challenged immunization rule was promulgated in the wake of the Department of Health and Human Services' ("DHHS") vaccination rule for healthcare workers, which excluded EMS and dental personnel from its scope. *See* Pls.' Compl. ¶¶ 13-23. On August

1

26, 2021, MEMS issued an emergency immunization rule. Pls.' Compl. ¶ 24. Simultaneously, MEMS began the process of promulgating a permanent immunization rule for its workers. Pls.' Compl. ¶ 25. The permanent immunization rule—titled "Chapter 21 Immunization Requirements"—was ultimately adopted and went into effect on August 7, 2022. *See* Pls.' Compl. Ex. A. The immunization rule essentially requires all EMS workers who provide "direct patient care"[1] to provide proof of vaccination against COVID-19 and to obtain an annual flu shot. *See id.* EMS workers are considered vaccinated against COVID-19 when they have received all the recommended doses in the primary series. *Id.* For statutory authority supporting the rule's promulgation, MEMS cited 32 M.R.S. § 84(1)(A). *Id.*

This lawsuit was initiated in December 2022 by "individuals who lost employment as EMS workers as a result of the implementation of the Immunization Rule." Pls.' Compl. ¶ 10. Plaintiffs characterize this matter as "an action to determine the validity of the [immunization rule]" pursuant to 5 M.R.S. § 8058 (*see* Pls.' Compl. ¶¶ 1, 4), although they reference M.R. Civ. P. 80C in a number of places as well. *E.g.*, Pls.' Compl. ¶ 7. As grounds for challenging the rule, Plaintiffs assert that MEMS (1) lacked statutory authority to promulgate the rule; (2) "may have also violated the rule-making procedures required under the Administrative Procedures Act"; and (3) increased EMS worker shortages in violation of its duties under the Emergency Medical Services Act ("EMS Act"). *See* Pls.' Compl. ¶¶ 33-37, 54-55. Plaintiffs ask the court to invalidate the immunization rule; award "compensation for lost wages and lost benefits under M.R. Civ. P. 80(C)(i) and 14 M.R.S. § 5960"; and award "compensation for other costs incurred under 14 M.R.S. § 5962."

Defendants filed a motion to dismiss, which was followed by Plaintiffs' motion for summary judgment. Several additional motions are also pending, as noted below.

---

[1] "Direct Patient Care" means any activity that places an individual within six feet of a patient for a period of fifteen minutes or more. Pls.' Compl. Ex. A.

## STANDARD OF REVIEW

### Motion to Dismiss Standard

Defendants seek to dismiss the complaint pursuant to M.R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

*M.R. Civ. P. 12(b)(1)*. To the extent Defendants challenge this court's subject matter jurisdiction over Plaintiffs' claims, that presents a question of law. *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335. "When a motion to dismiss is based on the court's lack of subject matter jurisdiction, [the court] make[s] no favorable inferences in favor of the plaintiff." *Id.*

*M.R. Civ. P. 12(b)(2)*. With respect to rule 12(b)(2) motions challenging personal jurisdiction, the court is not confined to the four corners of the complaint. *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 12, 735 A.2d 984 ("'Facts regarding jurisdictional questions may be determined by reference to affidavits, by a pretrial evidentiary hearing, or at trial when the jurisdictional issue is dependent upon a decision on the merits.'"). "When the court proceeds only upon the pleadings and affidavits of the parties, the plaintiff need only make a prima facie showing that jurisdiction exists, and the plaintiff's written allegations of jurisdictional facts should be construed in its favor." *Id.* ¶ 14 (quotation marks omitted).

*M.R. Civ. P. 12(b)(6)*. Finally, a motion to dismiss under rule 12(b)(6) "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83. "For purposes of a Rule 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *Id.* "In reviewing a dismissal, [the court] will examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* "A dismissal should occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claims." *Id.* (quotation marks omitted).

3

The general rule is that only the facts alleged in the complaint may be considered on a motion to dismiss. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. However, "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged." *Id.* ¶ 11.

**Summary Judgment Standard**

"A summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements [of material fact] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (quoting M.R. Civ. P. 56(c)). In assessing whether this standard has been met, the court must view the facts in the light most favorable to the non-moving party. *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

DISCUSSION

**I. Defendants' Motion to Dismiss**

Defendants move to dismiss the complaint on three grounds. First, they seek dismissal under M.R. Civ. P. 12(b)(2), arguing that Plaintiffs failed to name the proper party. Second, they ask the court to dismiss any Rule 80C claims for lack of subject matter jurisdiction pursuant to M.R. Civ. P. 12(b)(1). And finally, Defendants argue that dismissal is required under M.R. Civ. P. 12(b)(6) because Plaintiffs' Section 8058 challenge to the immunization rule fails as a matter of law. These contentions are addressed below.

**A. *M.R. Civ. P. 12(b)(2)***

Plaintiffs name Maine Emergency Medical Services and Sam Hurley, in his official capacity as EMS Director, as defendants in this action. Defendants argue that dismissal is warranted under M.R. Civ. P. 12(b)(2) because Plaintiffs failed to name the proper

4

defendant. According to Defendants, the EMS *Board* is the proper party because it is the entity that has been vested with the authority to promulgate rules. The named defendants, by contrast, "lack rulemaking authority" and "did not promulgate the rule" challenged in this action. Defs.' Mot. Dismiss 8.

"When a party seeks to sue an agency of the State, the proper party defendant is any officer, office, department, agency, authority, commission, board, or institution against whom the plaintiff has alleged a right to final relief." *Me. State Empl. Ass'n SEIU Local 1989 v. Dep't of Corr.*, 682 A.2d 686, 689 (Me. 1996). Moreover, the Law Court has held that "[t]he mere misidentification of an agency of the State does not necessitate the dismissal of the complaint." *Id.* at 690. Rather, upon learning of the misidentification, the court "should simply change the title of the case to reflect correctly the adversary parties involved." *Id.*

To place Defendants' contention in context, it is helpful to review the Maine Emergency Medical Services Act. The Act defines "Maine Emergency Medical Services" to include "the board, the emergency medical services director and staff within the Department of Public Safety responsible for carrying out the purposes of this chapter." 32 M.R.S. § 83(16-A). The board is primarily responsible for carrying out the purposes of the Act and has been vested with rulemaking authority. *See* 32 M.R.S. §§ 84, 88. The director is charged with "administer[ing] Maine Emergency Medical Services." 32 M.R.S. § 88-A. The board, director, and Maine EMS staff are "all under the auspices of the Department of Public Safety." *Berard v. McKinnis*, 1997 ME 186, ¶ 7 n.6, 699 A.2d 1148.

Here, Plaintiffs have appropriately named MEMS, a statutorily defined entity of which the Board is a part. Plaintiffs also seek compensation for lost wages and benefits—relief that if granted, would seemingly be enforceable against the director as head administrator. *See SEIU Local 1989*, 682 A.2d at 689 (finding bureau was properly named as a party where, *inter alia*, it could "be charged with providing part of the relief sought ... or with insuring the Department's compliance with any judgment"). Moreover, even if either party was misnamed, dismissal is not the appropriate remedy. Rather, the court should simply recaption the matter to reflect the Board as the proper defendant. *See id.* 690.

5

### B. *M.R. Civ. P. 12(b)(1)*

Although Plaintiffs' complaint primarily relies on 5 M.R.S. § 8058 as the source for this court's jurisdiction, the complaint also references Rule 80C and asserts that the challenged "rule is a final agency action affecting the rights, duties and privileges of the individual Plaintiffs." Pls.' Compl. ¶ 7. Defendants seek to dismiss any claims based on Rule 80C for lack of jurisdiction because Plaintiffs fail to point to any adjudicatory decision rendered by the agency; rather "the only agency-related action Plaintiffs appear to challenge is the Board's promulgation of the Rule." Defs.' Mot. Dismiss 8-10. Plaintiffs suggest in reply that they are not making a separate claim for relief under Rule 80C, noting that the rule is "only relevant to the Plaintiffs' case insofar as 80C case law supports the damages claims Plaintiffs are making under their declaratory action." Pls.' Reply to Defs.' Omnibus Mem. 3 n.2.

Based on Plaintiffs' filings, the court considers this action to be a challenge to the agency's rulemaking pursuant to 5 M.R.S. § 8058. There is no dispute regarding this court's ability to exercise jurisdiction under that provision. Thus, the primary question, as discussed next, is whether Plaintiffs have stated a claim for relief under Section 8058.

### C. *M.R. Civ. P. 12(b)(6)*

Defendants argue that Plaintiffs' "Section 8058 claim seeking a declaratory judgment that the rule is invalid should be dismissed as a matter of law." Defs.' Mot. Dismiss 11. Section 8058 is the provision of the Administrative Procedure Act ("APA") addressing judicial review of rules and the rulemaking process. *Cumberland Farms N., Inc. v. Maine Milk Comm'n*, 428 A.2d 869, 873 (Me. 1981). Under that provision, "judicial review of an agency rule ... may be had by any person who is aggrieved in an action for declaratory judgment in the Superior Court[.]" 5 M.R.S. § 8058(1).

Consistent with the terms of Section 8058, the Law Court has approached rulemaking challenges in three steps: (1) "If the rule exceeds the rule-making authority of the agency, it [will be deemed] invalid"; (2) "If a rule does not exceed the rule-making authority, the court next reviews 'any other procedural error' related to the promulgation

of the rule"; and (3) "if the rule is procedurally correct and within the agency's rule-making authority, it is reviewed substantively 'to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *Conservation Law Found. v. Dep't of Env't Prot.*, 2003 ME 62, ¶ 21, 823 A.2d 551.

Plaintiffs' complaint poses a theory of relief that fits into each category. First, Plaintiffs argue that the agency lacks statutory authority to promulgate rules governing immunization. Second, they assert that the "agency may have also violated the rule-making procedures required under the Administrative Procedures Act." Pls.' Compl. ¶ 55. Plaintiffs later elaborate on this vague claim in their motion papers, contending that the rule was improperly characterized as a "routine technical rule" and was promulgated without the necessary legislative review and approval. Finally, Plaintiffs argue that the "agency's rule making actions violated its duties and obligations under the Emergency Medical Services Act by substantially increasing worker shortages and otherwise hindering and preventing the provision of necessary and essential services to Maine communities." Pls.' Compl. ¶ 54. Each claim is addressed below.

### 1. *The Agency's Authority to Promulgate the Immunization Rule.*

"State agencies may exercise only that power which is conferred upon them by law." *Molasses Pond Lake Assoc. v. Soil & Water Conservation Com.*, 534 A.2d 679, 681 (Me. 1987). "'The source of that authority must be found in the empowering statute, which grants not only the expressly delegated powers, but also incidental powers necessary to the full exercise of those invested.'" *Id.* Indeed, an authorizing statute may "grant[] such powers as may be fairly implied from its language." *State v. Fin & Feather Club*, 316 A.2d 351, 355 (Me. 1974). "These powers are: [1] those necessarily arising from powers expressly granted, [2] those reasonably inferred from powers expressly granted, [and] [3] those essential to give effect to powers expressly granted." *Id.* "[A]n agency's construction of the enabling statute is entitled to great deference" by the court. *Molasses Pond*, 534 A.2d at 681.

7

In adopting the immunization rule, the Board relied on the authority conferred to it in 32 M.R.S. § 84(1)(A). That provision states:

**1. Powers and duties.** The board has the following powers and duties.

A. The board shall conduct an emergency medical services program to fulfill the purposes, requirements and goals of this chapter. The board *shall adopt* the forms, *rules*, procedures, testing requirements, policies and records *appropriate to carry out the purposes, requirements and goals of this chapter*.

32 M.R.S. § 84(1)(A) (emphasis added); *see also* 32 M.R.S. § 88(2)(B) ("With the advice of the commissioner, the board shall adopt rules in accordance with the Maine Administrative Procedure Act to carry out this chapter.").

Thus, the Board is vested with broad rulemaking authority that is limited only by the requirement that the rule be appropriate to carry out a purpose, requirement, or goal of the EMS Act. *Id.* The purposes and goals of the Act are identified in Section 81-A:

It is the purpose of this chapter to promote and provide for a comprehensive and effective emergency medical services system *to ensure optimum patient care*. The Legislature finds that emergency medical services provided by an ambulance service are essential services. The Legislature finds that the provision of medical assistance in an emergency is a matter of vital concern affecting the health, safety and welfare of the public.

It is the intent of the Legislature to designate that a central agency be responsible for the coordination and integration of all state activities concerning emergency medical services and the overall planning, evaluation, coordination, facilitation and regulation of emergency medical services systems. Further, the Legislature finds that the provision of prompt, efficient and effective emergency medical dispatch and emergency medical care, a well-coordinated trauma care system, effective communication between prehospital care providers and hospitals and the *safe handling and transportation,* and the treatment and nontransport under appropriate medical guidance, *of the sick and injured* are key elements of an emergency medical services system. This chapter is *intended to promote the public health, safety and welfare* by providing for the creation of a statewide emergency medical services system with standards for all providers of emergency medical services.

32 M.R.S. § 81-A.

8

Some purposes and goals of the EMS Act, therefore, are "ensur[ing] optimum patient care," the "safe handling and transportation ... of the sick and injured," and "promot[ing] public health, safety and welfare." *Id.* Thus, the court concludes that the agency was acting pursuant to its statutory authority in promulgating the rule: by requiring EMS workers who provide direct patient care to become vaccinated against transmissible and potentially deadly diseases, the Board was taking "appropriate" action "to carry out" a purpose or goal of the Act, i.e., ensuring optimum and safe patient care and promoting public health, safety, and welfare. *See* 32 M.R.S. §§ 81-A, 84(1)(A).

Moreover, contrary to Plaintiffs' suggestions, the Legislature need not explicitly grant the Board the power to adopt immunization requirements—as it did with DHHS—in order for the Board to promulgate rules governing the vaccination of EMS workers. *Compare* 22 M.R.S. § 802(1)(D)(3) ("[DHHS] may establish procedures for control, detection, prevention and treatment of communicable, environmental and occupational diseases, including public immunization and contact notification programs"). The Law Court has explained that authority may be "reasonably inferred from powers expressly granted." *Fin & Feather Club*, 316 A.2d at 355. And here, the power to promulgate the vaccination rules was gleaned by reasonable inference from the powers expressly set forth in 32 M.R.S. § 84(1)(A); *see also id.* § 81-A.

Nor does the Legislature's grant of immunization authority to DHHS preclude the Board from adopting vaccination rules applicable to its own licensees. The notion that the Board be allowed to adopt vaccination rules in an area where DHHS has not acted is fully consistent with the considerable discretion professional boards have in policing their licensees, as well as the Board's prerogative to protect public health, safety, and welfare through rules that reasonably regulate the occupation. *See* 32 M.R.S. §§ 81-A, 84(1)(A). For all the forgoing reasons, the court concludes that the Board acted within its authority when it adopted the challenged rule.

## 2. *Alleged Procedural Errors Related to the Adoption of the Immunization Rule.*

Plaintiffs further assert that the Board improperly characterized the immunization rule as a "routine technical rule"—as opposed to a "major substantive rule" —and promulgated it without the necessary legislative review and approval. In response, the Board maintains that the rule's designation as "routine technical" was appropriate because the enabling statute (32 M.R.S. § 84(1)(A)) was enacted in 1982, a time when all rules were routine technical.

In 1995, the Maine Legislature amended the APA with legislation titled "An Act to Ensure That Rulemaking by Agencies Does Not Exceed the Intent of Authorizing Legislation." *See* L.D. 1123 (117th Legis. 1995). Those amendments were designed "to provide for greater legislative oversight of certain new agency rules." L.D. 1123, Statement of Fact (117th Legis. 1995). As a result of this amendment, the APA now recognizes two categories of rules—"routine technical rules" and "major substantive rules" —and for each category, establishes a different rulemaking procedure. *See* 5 M.R.S. § 8071(2). "Major substantive rules" are:

> rules that, in the judgment of the Legislature:
>
> **(1)** Require the exercise of significant agency discretion or interpretation in drafting; or
>
> **(2)** Because of their subject matter or anticipated impact, are reasonably expected to result in a significant increase in the cost of doing business, a significant reduction in property values, the loss or significant reduction of government benefits or services, the imposition of state mandates on units of local government as defined in the Constitution of Maine, Article IX, Section 21, or other serious burdens on the public or units of local government.

5 M.R.S. § 8071(2)(B). This category is subject to a full rulemaking procedure, and after being provisionally approved by the agency, must be submitted to the Legislature for review and authorization before final adoption. 5 M.R.S. § 8072; *Stewart v. Maine Dep't of Health and Human Services*, ROCSC-CV-12-063, (Mar. 12, 2014).

10

Meanwhile, "routine technical rules" are defined as "procedural rules that establish standards of practice or procedure for the conduct of business with or before an agency and any other rules that are not major substantive rules . . . ." 5 M.R.S. § 8071(2)(A). These rules are subject to a comparatively limited rulemaking procedure and may be adopted by the agency without prior legislative approval. *See* 5 M.R.S. § 8071(3)(A); *Stewart*, ROCSC-CV-12-063.

Under Section 8071, "[t]he Legislature reserved to itself the authority to assign an agency's rules to one category or the other, and it does so *at the time it adopts the legislation authorizing the agency to promulgate the rules*." *Stewart*, ROCSC-CV-12-063 (emphasis added). This is the reason why some authorizing statutes, such as the enabling statute under which the Board acted in this case (*see* 32 M.R.S. § 84(1)(A)), do not specify whether the agency rules to be promulgated are "routine technical" or "major substantive": They were enacted by the Legislature *before* the 1995 amendments and rule classification scheme took effect.

For rules promulgated pursuant to 32 M.R.S. § 84(1)(A)—which is an authorizing statute enacted prior to the 1995 amendments that has not been given a designation—the "major substantive" classification and corresponding legislative approval requirement does not apply. Rather, rules adopted under 32 M.R.S. § 84(1)(A) are subject to standard rulemaking procedures—i.e., the procedures that apply to "routine technical rules." *See* L.D. 1123, Statement of Fact (117th Legis. 1995) (indicating in the statement of fact accompanying the 1995 amendments that "[r]outine technical rules are subject to current rule-making requirements").

Indeed, Section 8071 is clear that "rules adopted *pursuant to rule-making authorization delegated to an agency after January 1, 1996* are subject to" the classification scheme and other procedures established by the 1995 amendments. 5 M.R.S. § 8071 (emphasis added). Even the title of the subchapter in which the classification scheme appears is telling: "Rulemaking Procedures Governing Rules *Authorized and Adopted after January 1, 1996*." In other words, it is not enough that the rules be adopted

11

after January 1, 1996; the statutory authorization allowing the agency to promulgate the rules also has come after 1996.

Thus, because 32 M.R.S. § 84(1)(A) is a pre-1996 enabling statute and because the Legislature has not subsequently amended the provision to include a "major substantive" designation, the Board appropriately treated the immunization rule as a "routine technical" rule that did not require legislative scrutiny or approval.

### 3. *Whether the Immunization Rule Violated the Agency's Duties and Obligations Under the EMS Act by Increasing Worker Shortages.*

Plaintiffs further maintain that the immunization rule contravenes the applicable statutory scheme by increasing worker shortages, thereby preventing local governments from maintaining the staff necessary to serve Maine communities. "When an agency utilizes its expertise in setting policy, as long as it does not contravene its statutory authority, [the court will] defer to its policy determinations." *Conservation Law Found.*, 2003 ME 62, ¶ 31, 823 A.2d 551.

As discussed above, the Board acted within its statutory authority when it promulgated the immunization rule. Adopting a vaccination rule to promote public health and safety—even if it ultimately had adverse effects on staffing—is a classic policy decision that warrants deference by the court.

Because Plaintiffs' challenges to the immunization rule fail as a matter of law, Defendants' motion to dismiss will be granted.

## II. Plaintiffs' Motion for Summary Judgment and Other Pending Motions

Also pending are Plaintiffs' (1) motion for summary judgment, (2) motion for leave to amend their statement of material facts, and (3) motion to exempt the parties from the ADR process. Having granted Defendants' motion to dismiss, these motions will be dismissed as moot.

The entry is:

- Defendants' motion to dismiss is GRANTED;

- Plaintiffs' motion for summary judgment is DISMISSED as moot;

- Plaintiffs' motion for leave to amend their statement of material facts is DISMISSED as moot; and

- Plaintiffs' motion to exempt the parties from the ADR process is DISMISSED as moot.

The clerk is directed to incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: July 13, 2023

Michaela Murphy
Justice, Maine Superior Court

Entered on the docket 7/13/23

13