**Rita E. BIEWALD, et al.**

v.

**STATE of Maine, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 10, 1981.

Decided Sept. 30, 1982.

Lucinda E. White (orally), Gail Marshall, Pine Tree Legal Assistance, Inc., Portland, for plaintiffs.

Sarah L. Downs, Asst. Atty. Gen. (orally), Augusta, for defendants.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

The Petitioner, Rita E. Biewald, for herself and on behalf of her minor and diabetic son, Timmy Perrault, appeals from the April 27, 1981, entry of judgment in Superior Court (York County) which affirmed the decision of a fair hearing officer of the Maine Department of Human Services to deny payment under the State's Medical Assistance Program for certain testing materials essential to this mother's treatment of her diabetic son.

We reverse the judgment.

Mrs. Biewald receives Aid to Families with Dependent Children (AFDC) benefits for her son, Timmy, who was six years old when he was diagnosed as a diabetic in 1979. Her son's treatment plan, as established by his doctor, requires diet control, insulin injections, and urine testing four times a day. The testing is necessary to determine proper insulin dosage to control the disease. Timmy's insulin and syringes are provided under the Early and Periodic Screening, Diagnosis and Treatment (EPSDT) section of the Medicaid program. The urine testing materials, Clinitest and Acetest tablets, are not provided. The mother testified below that she lacked the means to pay for the testing materials.

When the Department of Human Services, which administers Medicaid in Maine, refused to provide the tablets for her diabetic son, the Petitioner sought an administrative hearing, which was held on January 25, 1980. The hearing officer found that the tablets were either an over-the-counter drug or a medical supply. Under Sections 80.05 and 60.04–1 of Chapter II of the Maine Medical Assistance Manual, which contains the Maine regulations for the Medicaid program, the officer found that such items could not be provided, even though they "seem necessary for continued treatment." The petitioner then brought this action for review of that determination in Superior Court pursuant to M.R.Civ.P. 80B.[1] From the entry of judgment in Superior Court affirming the decision of the hearing officer, the petitioner filed a timely notice of appeal to this Court. The state has taken a cross-appeal.

The case arose out of the State of Maine's participation in the federal Medicaid program.[2] This partially federally funded program is designed to assist states in providing medical services to needy persons. The decision to participate in the Medicaid program is a voluntary one. Once a state elects to participate in the program however, it must provide a state plan which meets certain minimum federal guidelines. Specifically, the federal statute and regulations require every participating state to make available to categorically needy persons five mandatory services.[3] One of these mandatory services includes "early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physi-

1. We treat this appeal as a claim by the individual plaintiffs and not as a class action. Plaintiffs sought to have the action certified as a class action pursuant to M.R.Civ.P. 23 and a document in the case file appears to provide such certification. No order of the court was ever entered, however, ordering such certification. We do not address, therefore, whether a class action is available when review of final agency action is sought under M.R.Civ.P. 80B, or whether the complaint asserts a claim under 42 U.S.C. § 1983 that would support certification as a class action.

2. See 42 U.S.C. §§ 1396–1396K (1970 & Supp. 1975–1980).

3. See 42 U.S.C. § 1396a(a)(13)(B); 42 U.S.C. § 1396d(a)(1)–(5).

cal or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby, . . .[4]" [hereinafter referred to as the EPSDT program]. The parties in the case before the Court do not dispute that the plaintiff's son, Timmy Perrault (aged six years at time of diagnosis), is eligible for treatment for his diabetic condition under the EPSDT program. The only issue presented for our decision is whether, in addition to providing Timmy with insulin and syringes to treat his condition, the State must also provide him with the necessary urine testing materials for four tests per day to determine proper daily insulin dosage. Although these testing materials were determined to be "medically necessary" by the child's physician, the Maine Department of Human Services which administers the State Medicaid program, found that the materials were not covered by the State plan and therefore were not compensable.

In our opinion, this case turns on the narrow ground of whether the state's action of failing to provide the urine testing materials violates the state and federal regulations applicable to this case. The Secretary of Health, Education and Welfare has promulgated a regulation which requires that "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose."[5] Further, the federal regulations pertaining specifically to EPSDT services, would appear to allow a state the alternative of complying with this regulation by making referrals for EPSDT *treatment* services not covered by the State plan. The federal referral regulation provides:

> [42 C.F.R.] § 441.85 Referral for services not in the State plan.
>
> The agency must provide referral assistance for treatment not covered by the plan, but found to be needed as a result of conditions disclosed during screening and diagnosis. This referral assistance must include giving the family or recipi-

ent the names, addresses, and telephone numbers of providers, who have expressed a willingness to furnish uncovered services at little or no expense to the family.

The State Medicaid plan also has a provision, tracking the language of the above cited federal regulation, which requires the state to make referrals for uncovered EPSDT treatment services. *See* MMAM Ch. II, § 28.06–5(c).

There is no doubt that a state has considerable discretion in placing appropriate limitations on services rendered under a State Medicaid plan. *See Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977). Nonetheless, that discretion is itself limited by the federal regulations which require reasonableness, *see, e.g., Simpson v. Wilson,* 480 F.Supp. 97, 100 (D.Vt.1979), and permit limits based on "medical necessity or . . . utilization control procedures." 42 C.F.R. § 440.230(c)(2); *White v. Beal,* 555 F.2d 1146, 1149 (3rd Cir. 1977). The question ultimately presented is: what is reasonable? This regulation has been interpreted to mean "that services provided reasonably achieve their purpose if the amount, scope and duration would be sufficient for *most* persons needing that type of care." *Virginia Hosp. Ass'n v. Kenley,* 427 F.Supp. 781, 785–86 (E.D.Va.1977). (citing HEW Field Staff Information and Instruction Series: FY–76–62 at page 7 (Jan. 2, 1976). In our judgment, any other interpretation of the regulation would defeat the purpose of the program.

It is common knowledge that successful treatment of insulin dependent, diabetic children is impossible without urine testing materials such as Clinitest and Acetest to determine proper insulin dosage. *See, e.g.,* Harrison, *Principles of Internal Medicine* 1745 (9th ed. 1980). The necessity of these materials to secure the success of the treatment program at issue in this case is not disputed. The plaintiff's treatment is not unique or unusual; most, if not all insulin dependent, diabetic children require

---

**4.** 42 U.S.C. § 1396d(a)(4)(B).

**5.** 42 C.F.R. § 440.230(b) (1980).

testing materials such as those at issue in this case for treatment of their condition. We reject the State's argument that the testing materials are "diagnostic materials" and, therefore, not essential to the plaintiff's treatment. The Fair Hearing Decision dated February 21, 1980, states as the "Reason for Decision":

"The Agency policy does not provide for medicaid payment of such items, although such items *seem necessary* for continued treatment.

(Emphasis added.)

It is clear on the facts of this case that, pursuant to applicable federal and state legislation and regulations, in order for the state to comply with the requirement that the EPSDT treatment service be sufficient in amount, duration and scope, it must either provide the urine testing materials as a medical supply under "covered services" or provide the referral assistance for such treatment materials not covered by its plan. Of critical importance in this case is the fact that the Department of Human Services made no referral of the appellant to any outside provider of the testing materials upon determining that they were not to be treated as a "covered service". Under the provisions of the federal referral regulation (42 C.F.R. § 441.85 (1980)) and the state's own regulation (MMAM Ch. II, & 28.06–5(c)), the state agency "*must provide referral assistance* for treatment not covered by the plan, but found to be needed as a result of conditions disclosed during screening and diagnosis . . . ."[6] (emphasis added).

Our reading of this regulation leads us to conclude that the burden is on the state agency to initiate such a referral. The language "must provide referral assistance" is clear and unambiguous, and is clearly mandatory upon the state agency. It places no burden upon the appellant to request a referral. It is only common sense and fair to place the burden of referral upon the state agency that promulgates the regulation and therefore has knowledge of its availability

to an applicant who may not know of its existence. In addition, it is the state agency and not the applicant that is required to have knowledge of those outside providers who are prepared to furnish any uncovered treatment services at little or no cost.

■ The state agency's failure to provide the petitioner with referral assistance left her in the position of requiring the testing materials as an essential component of a necessary medical treatment service" . . . sufficient in amount, duration and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b) (1980). Under the analysis hereinbefore set forth, such a service cannot be denied to one in that posture without violating the minimum requirements of the federal and state statutes and regulations promulgated thereunder. If the medical treatment service is *necessary* to the achievement of the purpose of the covered treatment, as it has been determined to be in this case, it must either be provided as a covered service by the agency or by referral to an outside provider pursuant to its own regulation. Here, the state agency did neither.

We are led to conclude that the Superior Court committed an error of law in affirming the decision of the agency on the finding "that no error was committed at the agency level." Specifically, the Superior Court erred in failing to vacate the agency action on grounds that its decision was in violation of 22 M.R.S.A. § 3173 (1980) and its regulation promulgated thereunder (MMAM Ch. II, § 28.06–5(c)). *See* 5 M.R.S.A. § 11007(4)(C)(1) (providing manner and scope of review of state agency action). Accordingly, we sustain the appeal, reverse the judgment of the Superior Court and remand the case to the Department of Human Services with direction to comply with applicable statutes and regulations consistent with this opinion.

■ We further deny the State's crossappeal, in which they argue that the plaintiff had not exhausted her administrative

6. We need not reach, in this case, the question of whether this regulation is a facially reasonable vehicle by which the state agency may seek

to limit the extent of otherwise necessary medical services to be directly provided by the agency.

remedies before the agency and, consequently, the Superior Court had no jurisdiction to entertain the 80B appeal. The State's argument is without support in the record. The record indicates that the plaintiff pursued every step afforded her before the agency. She applied for and was denied reimbursement for the urine testing materials. From this denial, she pursued her right of appeal provided for in such cases under 22 M.R.S.A. § 3181. She timely appealed that denial to the commissioner, who provided her with a "fair hearing" before a properly designated and authorized member of the agency. From the unfavorable fair hearing decision, she filed a timely 80B complaint in Superior Court for review of the agency decision, as provided in section 3181. The plaintiff in this case therefore complied with the requirement of exhaustion of administrative remedies by properly appealing the denial of the materials through the agency before filing her 80B complaint in Superior Court.

The entry is:

Appeal sustained.

Judgment of Superior Court vacated. Remanded to the Superior Court to enter an order remanding the case to the Department of Human Services for proceedings consistent with the opinion herein.

Cross-appeal denied.

McKUSICK, C. J., and ROBERTS and CARTER, JJ., concurring.

NICHOLS and WATHEN, Justices (dissenting).

We cannot join in the judgment being entered today.

Fundamentally, we dissent because provision of the testing materials which are available over-the-counter is not "treat-ment" and is not mandated either by the statutes or by pertinent regulations.

Somewhere a line must be drawn. Utilizing its expertise in dealing with these problems, the agency, as a matter of administrative convenience, drew the line between drugs and materials available only on prescription, on the one hand, and drugs and materials available over-the-counter, on the other hand. It is not clear whether the majority would jettison this whole administrative scheme or would create a limited exception where by regulation none existed heretofore. The difficulty with this ad hoc approach we foresee is that the agency has no principle or rule to guide it.

Today's majority would impose the requirement of either referral assistance or a provision of these materials under a federal regulation which speaks, not of testing materials sold over-the-counter such as these, but only of "treatment" not covered by the State's plan. 42 C.F.R. § 441.85. We disagree with their expansive interpretation of this rule. We would give "treatment" its plain meaning.

We agree with the United States Court of Appeals for the First Circuit that a state which elects to participate in the Medicaid program is not required to fund all "medically necessary" services. *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057, *reh'g denied,* 444 U.S. 888, 100 S.Ct. 187, 62 L.Ed.2d 122 (1979).[1]

We submit that a state is entitled to balance its fiscal and administrative concerns against its interest in providing for the health care needs of its indigent residents. *See* Note, *State Restrictions on Medicaid Coverage of Medically Necessary Services,* 78 Colum.L.Rev. 1491 (1978). We perceive the failure to apply this balancing test as another basic error of today's majority.

---

1. Most courts which ordered states to provide specific services under Medicaid have found those services to be required by the express terms of the federal statutes or regulations. *See, e.g., Buhs v. State,* 306 N.W.2d 127 (Minn. 1981) (chiropractic X-rays); *Philadelphia Wel-fare Rights Organization v. Shapp,* 602 F.2d 1114 (3d Cir. 1979), *cert. denied,* 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980) (dental care); *White v. Beal,* 413 F.Supp. 1141 (E.D.Pa. 1976), *aff'd,* 555 F.2d 1146 (3d Cir. 1977) (eyeglasses).

While the denial of the material sought by Mrs. Biewald for her son may seem unfortunate, we find nothing in the statutes or regulations which proscribes the actions taken by the state agency in this case.

The standard for review of agency action is established by 5 M.R.S.A. § 11007(4)(C) (1979). Here the action was not arbitrary, capricious or characterized by abuse of discretion. Rather, the policy of disallowing payment for over-the-counter drugs was clearly articulated in the Medical Assistance Manual approved by the Department of Health and Human Services.[2] This policy was in accordance with federal statutes and regulations, and, as applied to the case before us, it was properly implemented.

The exclusion of such over-the-counter materials from those which are provided by the agency was born of administrative convenience. Whether this exclusion should be allowed to continue is appropriately a matter of legislative, not judicial, concern.

We would deny both the appeal and the cross-appeal.

---

**2.** The Manual specifically states that:
Artificial tears and insulin are the only covered "over the counter" (OTC) drugs.
MMAM Ch. II, § 80.04–1(D) (1979). Likewise, over-the-counter drugs are nowhere included within the list of covered medical supplies. *See* MMAM Ch. II, § 60.04 (1979).