**STATE OF MAINE**

Cumberland, ss.

**SUPERIOR COURT**

**Civil Action**

Mabel Wadsworth Women's Health Center;
Family Planning Association of Maine
d/b/a Maine Family Planning and
Primary Care Services; and
Planned Parenthood of Northern New England,

**Plaintiffs**

v.

Ricker Hamilton, Acting Commissioner
of the Maine Department of Health and Human Services,
in his official capacity,

**Defendant**



STATE OF MAINE
Cumberland, ss. Clerk's Office

OCT 24 2017
12:57 p.m.
RECEIVED

**Docket No. PORSC-CV-15-527**

**DECISION AND JUDGMENT**

Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment came before the court for oral argument September 28, 2017, at which point the case came under advisement.

For the following reasons, Plaintiffs' Cross-Motion For Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

*Background*

A.  The Medicaid/MaineCare Framework

The joint state-federal program known as Medicaid, codified as Title XIX of the Social Security Act, provides federal funds to enable states to extend subsidized medical care to needy persons. *See* 42 U.S.C. §§ 1396-1396v (2017); 42 C.F.R. § 430.0

1

(2017). *See also Biewald v. State,* 451 A.2d 98, 99 (Me. 1982).

State participation in Medicaid is voluntary. However, once a state chooses to participate, it must comply with the requirements of federal law and regulations thereunder. A participating state must have a plan that is approved by the federal government and that provides, at minimum, certain mandatory services. *See* 42 C.F.R. §§ 430.0 et seq. These mandatory services include pregnancy related services, and family planning services. *See* 42 U.S.C § 1396a(a)(10).

On the other hand, federal law prohibits federal Medicaid funds from being used to fund abortions, except in cases of rape or incest, or when the life of the mother is in danger. The prohibition is codified in the Hyde Amendment, an appropriations measure that Congress has enacted every year since 1976, most recently through Pub. L. 115-31, div. H. tit. V § 507 (2017). In operation, the Hyde Amendment precludes federal reimbursement to states for any abortion services other than those within the exceptions Congress has deemed appropriate.

The State of Maine participates in the Medicaid program voluntarily through a program known as "MaineCare". *See Biewald,* 451 A.2d at 99. *See also* 22 M.R.S.A. §§ 3172-3184 (2016). The MaineCare program is administered by the Maine Department of Health and Human Services (DHHS). Defendant Hamilton is acting Commissioner of DHHS.

The specific healthcare services covered by MaineCare are defined in rules promulgated by DHHS rather than by the MaineCare statute. Regarding pregnancy related care, MaineCare covers "antepartum care, delivery, postpartum care, and other

2

services normally provided in uncomplicated maternity care." 10-144 C.M.R ch. 101(II), § 90.04-4(B) (2016). A child born to a mother covered by MaineCare will also be covered under MaineCare for one year following birth. 10-144 C.M.R. ch. 332, pt. 2, § 13.1(I) (2016). This coverage will continue even if the child's mother does not remain eligible for MaineCare throughout the year. *Id.* So long as family income eligibility requirements are met, MaineCare will provide coverage for children and teenagers through age twenty. 10-144 C.M.R. ch. 332, pt. 3, § 2.1 (2016).

In contrast to its broad coverage of pregnancy and child-related services, MaineCare covers abortion services only in the case of rape or incest, or if the pregnancy is life-threatening. The limitation on coverage is defined in a DHHS rule, codified at 10-144 C.M.R. ch. 101(II), § 90.05-2(A) ["Rule 90.05-2(A)"].[1] Rule 90.05-2(A) in one form or another has been in effect almost as long as the federal Hyde Amendment has been in effect.

In other words, MaineCare covers abortion services only to the extent the services are eligible for reimbursement with federal Medicaid funds, and this has been the case for decades.

Between 2014 and 2016 Maine spent more than one billion dollars per year covering optional benefits under its MaineCare program. (JSMF ¶94.) DHHS is not aware of any data showing that MaineCare's lack of coverage for abortions, except

---

[1] The rule reads, in pertinent part: "In compliance with PL 103-112, the Health and Human Services Appropriations bill, reimbursement for abortion services will be made only if necessary to save the life of the mother, or if the pregnancy is the result of an act of rape or incest." 10-144 C.M.R. ch. 101(II), § 90.05-2(A). *See http://www.maine.gov/sos/cec/rules/10/ch101.htm*

3

when federal reimbursement is available, provides any fiscal benefit to the State. (JSMF ¶95.)

B. Plaintiffs' Status as MaineCare Providers

The three Plaintiffs are enrolled MaineCare providers of family planning and abortion services. (JSMF ¶¶1, 5, 15.) As enrolled MaineCare providers, the Plaintiffs are paid directly by the State, through DHHS, when they provide a patient with a service covered by the MaineCare program.

When a patient of Plaintiffs decides to terminate her pregnancy through abortion, the decision may be for a variety of reasons (J.S.M.F ¶¶35-46.) These reasons include: the inability to provide financial support for a child, the belief that having a child would interfere with educational or career goals, the exacerbation of an existing physical or mental health condition, and the desire to escape an abusive relationship, and abnormal fetal development. (J.S.M.F ¶¶37-40, 43, 45).

No individual woman is a plaintiff in this matter. (JSMF ¶2.)

Plaintiffs charge between $500 to $600 for abortion services performed up to 14 weeks from a patient's last menstrual period. (JSMF ¶20.) After 14 weeks, the cost of an abortion increases to between $725 and $1000. (JSMF ¶20.) However, Plaintiffs always try to enable any woman who wishes to terminate her pregnancy to obtain an abortion regardless of her ability to pay. (JSMF ¶23.) Plaintiffs offer eligible women financial assistance to obtain an abortion. (JSMF ¶21.) One of the Plaintiffs writes off up to $12,000 a year for abortion services provided to needy women. (JSMF 22.) Plaintiffs have no record of any woman being denied access to abortion services due

4

to her inability to pay. (JSMF ¶24.)

In appropriate circumstances, Plaintiffs provide abortions and then seek reimbursement from the Maine Department of Health and Human Services. (JSMF ¶25.) Between 2010 and 2015, Plaintiff Mabel Wadsworth Women's Health Center submitted three claims for reimbursement for abortion services. (JSMF ¶29.) Two of those claims were denied. (JSMF ¶29.)

*Analysis*

In this case, the parties have presented the court with all of the facts that are material to the court's decision on the pending Motions.[2] There are no disputed issues of fact that could justify denying both of the pending Motions. Accordingly, the question before the court is: Which side is entitled to judgment based on the law and the record before the court?

Plaintiffs' Complaint in this case presents four counts, designated as "causes of action":

- First, Plaintiffs contend that the DHHS rule limiting MaineCare funding for abortions, 10-144 C.M.R. ch. 101(II), § 90.05-2(A) ["Rule 90.05-2(A)"] is invalid because it exceeds DHHS's rulemaking authority and is contrary to Maine statute

- Second, Plaintiffs contend that Rule 90.05-2(A) violates their patients' right to

---

[2] It has taken time for the parties to generate a comprehensive documentary record on which to base the determination of the legal issues. The court is appreciative of the extensive effort by both sides to develop and present a full record for judicial review.

liberty and safety guaranteed by the Maine Constitution. ME. CONST., art. I, §1.

- Third, Plaintiffs assert that Rule 90.05-2(A) violates their patients' right to equal protection of the laws, as guaranteed by sections 1 and 6-A of article I of the Maine Constitution. ME. CONST., art. I, §§1, 6-A.

- Fourth, Plaintiffs assert that Rule 90.05-2(A) violates their patients' right to substantive due process, also as guaranteed by sections 1 and 6-A of article I of the Maine Constitution. ME. CONST., art. I, §§1, 6-A.

In the prayer for relief, Plaintiffs' Complaint seeks a declaratory judgment invalidating Rule 90.05-2(A) on the grounds that it exceeds DHHS's statutory authority and violates the Maine Constitution provisions just cited. The Complaint asks that Defendant be enjoined from enforcing the rule.

The Plaintiffs' Cross-Motion for Summary Judgment seeks judgment in their favor on all of the grounds set forth in the Complaint.

The Defendant's Motion for Summary Judgment seeks judgment on all counts of the Complaint, but also raises several threshold issues as to standing and jurisdiction that merit discussion before the questions that the Plaintiffs raise are addressed.

A. Threshold Issues of Standing, Ripeness, Justiciability and Jurisdiction

Specifically, Defendant claims that (1) Plaintiffs lack standing as aggrieved parties for purposes of obtaining judicial review under the Maine Administrative

Procedure Act, 5 M.R.S. § 8058; (2) Plaintiffs lack standing to challenge Rule 90.05-2; (3) Plaintiffs' claims are not ripe for review; (4) Plaintiffs cannot bring claims directly under the Maine Constitution; and (5) Maine's Declaratory Judgment Act does not provide an independent jurisdictional basis for seeking relief.

Plaintiffs' first count is brought pursuant to section 8058 of Maine's Administrative Procedure Act (APA) which allows for judicial review of administrative agency rules. 5 M.R.S. § 8058 (2016).

Section 8058 allows any aggrieved party to bring an action for declaratory judgment in the Superior Court for the "review of an agency rule, or of any agency's refusal or failure to adopt a rule where the adoption of a rule is required by law." 5 M.R.S. § 8058. Plaintiffs' APA challenge contends that Rule 90.05-2(A) is contrary to the Maine statutory mandate for coverage of abortions and hence is invalid because it exceeds DHHS's rulemaking authority.

Defendant argues that Plaintiffs are not "aggrieved" parties because their claims are speculative and not ripe for review.

A person is aggrieved within the meaning of 5 M.R.S. § 8058 "if he has suffered a particularized injury, i.e., agency action operating directly and prejudicially on a party's personal rights." *Gross v. Secretary of State*, 562 A.2d 667, 670 (Me. 1989) (*citing Hammond Lumber Co. v. Finance Authority*, 521 A.2d 283, 286 (Me. 1987)).

Here, Plaintiffs are enrolled MaineCare providers who provide abortion services to MaineCare eligible patients. Because MaineCare covers abortion services only in limited circumstances, Plaintiffs cover some or all of the cost of abortion

7

services they provide to MaineCare eligible patients. (JSUMF ¶ 115.) Furthermore, because MaineCare does not cover abortions except in limited circumstances, Plaintiffs spend their own resources to provided financial counseling to patients in an effort to help them raise funds for an abortion. See (JSUMF ¶ 117.) Finally, and perhaps most importantly, Plaintiffs are engaged in the business of performing abortions (JSMF ¶ ¶ 1, 5, 15.) and would be reimbursed directly under MaineCare if abortions were fully covered to the same extent pregnancy services are covered. If Plaintiffs prevail in this litigation, they will directly benefit by receiving payment for abortions provided to MaineCare eligible women.

Because Rule 90.05-2(A) operates to diminish the Plaintiffs' opportunity to earn income through MaineCare reimbursement for abortion services, Plaintiffs suffer a particularized injury sufficient to confer standing as aggrieved parties, at least for purposes of their APA challenge. *See Singleton v. Wulff,* 428 U.S. 106, 112-13 (1976) (holding that abortion-provider physicians suffer a concrete injury from the operation of a state statute excluding abortions from Medicaid coverage).

Accordingly, the court concludes that Plaintiffs have standing, as aggrieved parties, to challenge the validity of Rule 90.05-2, at least on the ground that it exceeds DHHS's rulemaking authority.

However, as the Law Court has noted in a seminal opinion on standing, *Common Cause v. State,* 455 A.2d 1 (Me. 1983), a party may have standing for some purposes and not for others. With respect to the Plaintiffs' constitutional challenges to Rule 90.05-2, Defendant argues that the Plaintiffs lack standing to litigate their patients'

8

liberty, safety, due process and equal protection rights under the Maine Constitution.

Defendant points out that no women have been joined as plaintiffs, and also that Plaintiffs have not produced any admissible evidence establishing that Rule 90.05-2(A) has resulted in the denial of an abortion to or otherwise harmed any MaineCare beneficiary.

Plaintiffs respond by contending that they have third-party standing to assert the rights of their patients.

In Maine, there is no set formula for determining whether a party has standing. *See Roop v. City of Belfast*, 2007 ME 32, ¶7, 915 A.2d 966. "The gist of the question of standing' is whether the party seeking review has a sufficient personal stake in a justiciable controversy . . . that facilitates diligent development of the legal issues presented." *Halfway House v. City of Portland*, 670 A.2d 1377, 1380 (Me. 1996). In other words, the question is whether the particular plaintiff in the case is appropriately suited to assert and litigate the cause of action presented in the case.

Generally, a litigant may not assert the constitutional rights of third parties. *Common Cause v. State*, 455 A.2d 1, 6 (Me. 1983) (*citing Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976)). However, this general rule is not absolute and will yield to a number of exceptions where: (1) the constitutional claims of the non-litigants would otherwise be denied a judicial forum; (2) the rights of non-litigants would be impaired were they forced to assert those rights themselves, and (3) the litigant is in a special relationship with those whose rights are being asserted. *See id.*

Here, Plaintiffs claim that, as the sole abortion clinics in the State, they have

third-party standing to assert the constitutional rights of their patients. In *Singleton v. Wulff*, the United States Supreme Court held that physicians had standing to challenge the constitutionality of a state statute excluding state Medicaid reimbursement for abortions that were not "medically indicated." 428 U.S. at 108-09. Writing for a four-justice plurality of the Court, Justice Brennan concluded that the close, intimate relationship between physician and patient, the obstacles placed in front of a woman's assertion of her own rights, and the ability of the physician to advocate effectively rendered it appropriate for the physician to assert their patient's constitutional rights to be free from government interference with the abortion decision. *Id.* at 117.

In *Common Cause*, the Law Court noted that third-party standing requires that the constitutional rights being asserted are "congruent with the interests of the litigant and the third-party." *Common Cause*, 455 A.2d at 7. The court concluded that third-party standing should not apply "when the interests of the in-court litigant and the third party are basically opposed." *Id.*

As abortion providers, Plaintiffs are intimately involved in their patients' constitutionally protected decision to terminate a pregnancy. *See Singleton*, 428 U.S. at 117; *Roe v. Wade*, 410 U.S. 113,153-556 (1973). Furthermore, the rights being asserted by Plaintiffs are those of indigent woman who rely on MaineCare to obtain healthcare services, and who must obtain the services through MaineCare enrolled providers, such as Plaintiffs.

The fact that Plaintiffs have extended financial and other forms of support to

10

MaineCare eligible women to assure that no woman is denied access to abortion services shows how closely the interests of the Plaintiffs correspond to the interests of MaineCare eligible women. Far from undermining Plaintiffs' standing argument as the Defendant asserts, the fact that Plaintiffs have seen to it that no woman has been denied access to abortion services due to her inability to pay shows the complete congruity between the interests of Plaintiffs and those of the women they serve.

For these reasons, the court finds that Plaintiffs have standing to assert the state constitutional challenges to the validity of Rule 90.05-2(A) that are set forth in the second, third and fourth counts or causes of action in the Plaintiffs' Complaint.

Defendant also contends that the Plaintiffs' claims are not "ripe" for judicial review. "To determine if an issue is ripe for review, the court focuses on 'the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration.'" *Maine Public Serv. Co. v. Public Util. Comm'n,* 490 A.2d 1218, 1221 (Me. 1985) (*quoting Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)). "An issue is fit for review if the agency's action 'presents a concrete and specific legal issue' that has a 'direct, immediate and continuing impact' on the appealing party. *Maine Public Serv. Co. v. Public Util. Comm'n,* 524 A.2d 1222, 1226 (1987).

Here, Plaintiffs have presented undisputed evidence of impact from Rule 90.05-2(A), both to Plaintiffs themselves and to the patients they serve. As to Plaintiffs, the impact is financial—not being reimbursed by MaineCare. As to Plaintiffs' patients, the impact is being potentially denied the ability to obtain an abortion, unless one of the Plaintiffs donates or subsidizes, in effect, the cost of the service.

11

Even so, Defendant contends that Plaintiffs' claims are not ripe because they did not submit a claim for reimbursement and appeal the denial to the Superior Court in a Rule 80C petition for review. This contention ignores the fact that Plaintiffs' challenge is to Rule 90.05-2(A) itself, not to the application of the rule to a particular claim for reimbursement. Given the plain language of Rule 90.05-2(A) (and as the Defendant conceded at oral argument), it would have been futile for Plaintiffs to submit any claim for reimbursement for an abortion service not covered by Rule 90.05-2(A). *See Churchill v. S.A.D. # 49 Teachers Assoc.*, 380 A.2d 186, 190 (Me. 1977) (exhaustion of administrative remedies not required "[w]here the administrative agency is not empowered to grant the relief sought and it would be futile to complete the administrative appeal process.") Before DHHS could honor the claim that Defendant says the Plaintiffs should have filed, Rule 90.05-2(A) would have to be changed, which is what the Plaintiffs are asking.

The very purpose of the section 8058 declaratory judgment avenue is to create a separate avenue from the adjudicative appeal process for challenges to the validity of administrative rules. *See* 5 M.R.S. § 8058. In *Gross v. Secretary of State*, the Law Court held that a party challenging the validity of a rule is not required to exhaust administrative remedies. 562 A.2d 667, 670-71 (Me. 1989). *See also* Conservation Law Found. V. Dep't of Envtl. Prot., 2003 ME 62, ¶¶ 19, 21, 823 A.2d 551 (challenge to agency rule may proceed by declaratory judgment or by Rule 80C appeal from administrative action).

Lastly, the Defendant argues that the court lacks jurisdiction because the

second, third and fourth counts in the Plaintiffs' Complaint are not brought under section 8058 of the APA and the declaratory judgment statute. Defendant says that these are direct claims over which the court lacks jurisdiction even though they purport to be brought as declaratory judgment claims. Defendant is correct that the declaratory judgment statute, in and of itself, does not confer jurisdiction where jurisdiction would otherwise not exist. *See Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996); *see also* 14 M.R.S. §§ 5951 *et seq.* (Maine Declaratory Judgments Act).

The Defendant's argument that what the Complaint calls the Second, Third and Fourth Causes of Action are insufficient is, in substance, a motion for judgment on the pleadings that requires the Complaint to be evaluated in a light most favorable to the Plaintiffs. Viewed in that light, the court views the so-called four "causes of action" as being alternative grounds for invalidating the rule rather than as freestanding, independent causes of action. What the Complaint calls the First Cause of Action, in Plaintiff's Complaint is plainly brought under section 8058 of the APA for declaratory judgment, and the remaining counts, designated as the Second, Third and Fourth Causes of Action, all incorporate the prior allegations of the Complaint by reference.

Thus, in substance, the Complaint advances a single challenge to the validity of Rule 90.05-2, based on four distinct statutory and constitutional grounds. Defendant correctly notes that there would be no direct right of action regarding the Plaintiffs' constitutional claims. However, it is section 8058 of the Maine Administrative Procedure Act, coupled with Plaintiffs' "aggrieved party" status, that establishes jurisdiction to grant declaratory relief on any of the four statutory and constitutional

13

grounds for relief set forth in the Complaint.[3]

This case seems particularly appropriate for declaratory relief, given the nature of the questions raised and the significant public interest in the resolution of those questions. *See Perry v. Hartford Acci. & Indem. Co.*, 481 A.2d 133, 136 (Me. 1984). (internal citations omitted) (in determining whether the action is appropriate, court should "consider whether the adjudication will serve some useful purpose or whether the controversy presents an issue of public importance").

Based on the conclusion that Plaintiffs have standing to challenge the validity of Rule 90.05-2(A) on all of the grounds set forth in their Complaint; that their claims are ripe and justiciable, and that the court has jurisdiction, the analysis proceeds to examine Plaintiffs' challenge on its merits.

B.  Plaintiffs' Statutory Challenge to Rule 90.05-2(A)

   *(i)  Standard of Review*

Section 8058(1) of the Maine Administrative Procedure Act sets the standard of review for a challenge to a DHHS rule or refusal to adopt a rule as required by law. *Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME 62, ¶21, 823 A.2d 551; 5 M.R.S. § 8058.

This section provides a three-tier analysis for assessing a rule's validity. First, if the rule exceeds the agency's rulemaking authority, it is invalid. 5 M.R.S. § 8058(1).

---

[3]   In providing for substantive judicial review to determine if an agency rule is "otherwise not in accordance with law," section 8058(1) allows the court to consider statutory as well as constitutional challenges. 5 M.R.S. § 8058(1).

14

Second, any other procedural error will invalidate the rule only if the court "finds the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred." *Id.* Third, if the rule is within the agency's authority and is procedurally valid, then the court's review is limited to determining whether it "is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.*

*(ii) Validity of Rule 90.05-2(A)*

The Plaintiffs' primary objection to Rule 90.05-2(A), for purposes of their statutory claim, is that it conflicts with DHHS statute and thus exceeds DHHS's rulemaking authority as a matter of law. They do not assert any procedural irregularity in its promulgation nor do they contend that the rule is subject to the deferential "arbitrary, capricious, abuse of discretion" standard.

Whether the agency exceeds its statutory authority or acts contrary to law in promulgating a rule is an issue of statutory interpretation. *See Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME at ¶ 23, 823 A.2d 551.

In *Conservation Law Foundation*, the Law Court summarized the court's task in deciding whether a challenged rule is within the agency's statutory rulemaking authority, as follows:

> Whether the [agency] exceeded its statutory authority or violated other statutes in promulgating [the rule] is an issue of statutory interpretation. When a statute or statutory scheme is unambiguous, we ascertain the intent of the Legislature from the plain language. When there is ambiguity, however, we defer to the interpretation of a statutory

15

scheme by the agency charged with its implementation as long as the agency's construction is reasonable. A particular statute is not reviewed in isolation but in the context of the statutory and regulatory scheme. Furthermore, if the Legislature's intent is not expressed unambiguously and the interpretation of the statutory scheme involves issues that are within the scope of the agency's expertise, then the agency's interpretation must be given special deference.

*Id.*, 2003 ME at ¶23, 823 A.2d 551.

DHHS has general rule making authority to issue rules and regulations that are "necessary and proper for the protection of life, health, welfare, and the successful operation of the health and welfare laws." 22 M.R.S. § 42 (2016). Maine's Medicaid program ("MaineCare") is one of the laws within the authority of the Department. *See* 22 M.R.S. §§ 3172, et seq. DHHS has authority to "make all necessary rules and regulations consistent with the laws of the State for the administration of [MaineCare]." 22 M.R.S. § 3173 (2016). This includes, but is not limited to, "establishing conditions of eligibility and types and amounts of aid to be provided, and defining . . . the type of medical care to be provided." *Id.*

Rule 90.05-2(A) is found within chapter 101 of the Code of Maine rules. 10-144 C.M.R. Chapter 101 is known as the "MaineCare Benefits Manual" and is the set of rules implementing Maine's Medicaid program. *Id.* Rule 90.05-2(A) defines the type of abortion services that are covered under MaineCare and establishes what criteria must be met in order to be eligible for reimbursement.

For these reasons, Rule 90.05-2(A) does not, on its face, exceed DHHS's authority under 22 M.R.S. § 3173 to establish conditions of eligibility and define the type of medical care that will be provided to MaineCare patients. DHHS clearly has

16

the authority to make rules defining what procedures are, and are not, covered by MaineCare.

However, Plaintiffs' statutory challenge to Rule 90.05-2(A) is based on a different part of Title 22: the statement of Maine's public policy concerning abortion as set forth in 22 M.R.S. § 1598 (2016). This section is found in a part of Title 22 that deals with public health issues.

Plaintiffs allege that Rule 90.05-2(A) is "not in accordance with law" because it conflicts with the public policy of the State of Maine regarding access to abortion, as set forth by 22 M.R.S. § 1598. (Pls. Memo 24.) Section 1598 states in relevant part that "[i]t is the public policy of the state that the state *not restrict* a woman's exercise of her private decision to terminate a pregnancy before viability except as provided in section 1597-A." 22 M.R.S. § 1598 (emphasis added).[4]

Plaintiffs contend that Rule 90.05-92, in failing to provide MaineCare coverage for abortion except in three limited circumstances, restricts a woman's ability to exercise her right to an abortion in violation of section 1598.

The Legislature's intent in enacting the declaration of public policy at 22 M.R.S. § 1598 is not ambiguous, because the word "restrict" has a commonly understood meaning—"to confine within bounds . . ., restrain, . . to place under restriction . . ." Not to restrict something thus means not to confine, limit or restrain it. There is a clear semantic difference between not restricting exercise of a right and enabling the

---

[4] 5 M.R.S § 1597-A sets forth certain consent requirements for the performance of an abortion on a pregnant minor.

17

exercise of a right. One involves forbearance and the other involves support. Thus, based on the plain meaning of the word "restrict," the Legislature's commitment in enacting section 1598 not to restrict a woman's right to choose to have an abortion is cannot be deemed a commitment to enable a woman to obtain an abortion regardless of her ability to fund it.

In *Harris v. McRae*, the Court held that the Hyde Amendment, which, like Rule 90.05-2(A) in Maine, limits Medicaid funding for abortions to specified circumstances, does not violate a woman's due process right to an abortion. 448 U.S. 297, 315-17 (1980) ("The Hyde Amendment . . . places no governmental obstacle in the path of a woman who chooses to terminate her pregnancy . . ."). The Court summarized its conclusion as follows:

> Although Congress has opted to subsidize medically necessary services generally, but not certain medically necessary abortions, the fact remains that the Hyde Amendment leaves an indigent woman with at least the same range of choice in deciding whether to obtain a medically necessary abortion as she would have had if Congress had chosen to subsidize no health care costs at all. We are thus not persuaded that the Hyde Amendment impinges on the constitutionally protected freedom of choice recognized in [Roe v. Wade, 410 U.S. 113 (1971)].

448 U.S. at 316-17.

Though the Supreme Court's focus in *Harris* was not on 22 M.R.S. § 1598, the analogy is apt. *Compare Harris*, 448 U.S. at 316 ("government may not place obstacles in the path of a woman's exercise of her freedom of choice . . .") *with* 22 M.R.S. § 1598 ("the state[may] not restrict a woman's exercise of her private decision"). The government's failure to fund abortion services is not, in itself, a restriction on the right

18

to choose to have an abortion. Thus, a statute barring any restriction on a woman's exercise of her right to choose does not, in itself, compel the government to fund abortion services.

Plaintiffs further argue that Rule 90.05-2(A) restricts a woman's choice by "injecting coercive financial incentives favoring childbirth into [her] decision" (Pls. Mem. 31, *citing Harris*, 448 U.S. at 333 (Brennan, J., dissenting,)). But the government can permissibly subsidize one constitutionally protected choice and not the other. In *Anderson v. Town of Durham*, a case in which the Law Court upheld Maine's tuition payment statute, the statute at issue prohibited public funds from being used to pay tuition at religiously affiliated schools, while allowing public funds to be used to fund tuition at nonsectarian private schools. 2006 ME 39, ¶ 1, 895 A.2d 944. In its decision, the Law Court held that the tuition payment statute "merely prohibits the State from funding [the parents'] school choice, and as such, it does not burden or inhibit religion in a constitutionally significant manner." *Id.* at ¶ 54.

What *Anderson* illustrates is that Maine law differentiates between restricting the exercise of a constitutional right and not funding the exercise of the right. The former is unlawful; the latter is not.

Because Rule 90.05-2(A) does not restrict the range of options that are available to MaineCare recipients, and therefore does not prevent a woman from obtaining an abortion, it is not contrary to the public policy of Maine as declared in section 1598.

(iii) *Effect of Absence of Findings to Support Rule 90.05-2*

Plaintiffs argue that DHHS has failed to explain why the rule is a "reasonable"

19

interpretation of its mission, duties, and guiding principles. Plaintiffs contend that the Law Court's decision in *Cumberland Farms Northern, Inc., v. Maine Milk Comm'n*, 377 A.2d, 84, 85 (Me. 1977), requires DHHS to make specific findings as to why it adopted Rule 90.05-2(A).

In *Cumberland Farms*, the Law Court reviewed a decision of the Maine Milk Commission to determine whether it had incorrectly applied the pricing standards when fixing the price of milk under 7 M.R.S. § 2954. 377 A.2d at 85. Nothing in the Law Court's decision, however, indicates that this guidance extends beyond the Maine Milk Commission and should also be followed by DHHS or that it applies more broadly to all rules adopted by an administrative agency pursuant to the APA.

The APA imposes no general requirement that an agency must always explain its rationale for the adoption of a rule. *See Conservation Law Found., supra*, 2003 ME at ¶39, 823 A.2d 551 (holding that the Department of Environmental Protection's failure to provide an explanation for its adoption of a rule does not, in itself, demonstrate unreasonableness when such an explanation is not required either by the APA or by the agency's enabling statute).

Similarly, nothing in the DHHS enabling statute requires such an explanation. 22 M.R.S. § 42; 22 M.R.S. § 3173. The absence of an explanation for Rule 90.05-2(A) does not render the rule invalid.

(iv) *Rule 90.05-2(A) In Light of DHHS' Mission and Guiding Principles*

Plaintiffs argue that Rule 90.05-2(A) violates the mission and guiding principles of the DHHS, because the rule compromises the physical health and well-being of low-

income women by compelling them to forgo the treatment necessary to terminate their pregnancy. Plaintiffs further argue that Rule 90.05-2(A) violates the department's statutory mission by failing to "respect the rights and preferences" of MaineCare beneficiaries and by undermining their ability to "achieve and maintain their full economic independence and personal development."

The department's mission and guiding principles are set forth in 22-A M.R.S § 202 which provides in relevant part:

> 1. Mission. The mission of the department is to provide health and human services to the people of Maine so that all persons may achieve and maintain their optimal level of health and their full potential for economic independence and personal development. Within available funds, the department shall provide supportive, preventive, protective, public health and intervention services . . . . The department shall endeavor to assist individuals in meeting their needs and families in provide for the developmental, health and safety needs of their children, while respecting the rights and preferences of the individual or family.
>
> 2. Guiding Principles. The following principles are adopted to guide the department. In the performance of its duties, the department shall strive to:
> > A. Improve the health and well-being of Maine residents, with this goal guiding all decision, programs and services of the department
> > . . . .

22-A M.R.S. § 202 (2016) (emphasis added).

To the extent that Plaintiffs argue Rule 90.05-2(A) coerces women into compromising their health and well-being, their argument fails for the same reasons noted elsewhere in this opinion. Rule 90.05-2(A) does not force MaineCare beneficiaries to choose birth; it simply does not pay for termination of a woman's pregnancy.

21

Plaintiffs' argument that Rule 90.05-2(A) is not in accordance with law because beneficiaries would achieve a more optimal level of health and well-being, economic independence, and personal development if MaineCare provided reimbursement for abortion services, also fails. The department "has considerable discretion in placing appropriate limitations on services rendered under [the] State['s] Medicaid plan." *Biewald v. State*, 451 A.2d 98, 100 (Me. 1982). Also, the scope of services covered by MaineCare is a function of funds allocated; the second sentence of the mission statement reads in part: "*within available funds*, the department shall provide [certain services]." 22-A M.R.S. § 202 (emphasis added).

In fact, the mission statement is primarily aspirational and cannot fairly be construed to compel DHHS to fund any particular health service, including but not limited to abortion services. *See id.* (DHHS "shall *endeavor* to assist individuals . . . while respecting [their] rights and preferences" and "shall *strive* to improve the health and well-being of [individuals]") (emphasis added).[5]

DHHS's interpretation of its own enabling statutes is entitled to some deference, especially to the extent of any ambiguity or room for interpretation. *See Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME at ¶ 23, 823 A.2d 551. The DHHS plainly does not interpret any of the various provisions of title 22, Maine Revised Statutes, that are discussed above to require coverage of abortion services

---

[5] Plaintiff's argument that Rule 90.05-2(A) does not carry out the Department's mission as effectively as a rule providing for reimbursement of abortion services is actually a claim that the rule is arbitrary and capricious. Plaintiffs, however, only argue that the rule is "not in accordance with law" and do not claim that the rule is arbitrary and capricious. Even so, were the rule to be reviewed under the deferential arbitrary and capricious standard, it likely would pass muster.

beyond the limited circumstances set forth in Rule 90-05.02(A). This court cannot say that interpretation is wrong.

In conclusion, for purposes of their first count or Cause of Action, the Plaintiffs have not established that Rule 90.05-2(A) is beyond DHHS's rulemaking authority or inconsistent with any DHHS statute.

D. Plaintiffs' Equal Protection Claim

The Plaintiffs' third count or Cause of Action alleges that section 90.05-2(A) violates Article I, § 6-A of the Maine Constitution. Article I, § 6-A provides, "[n]o person shall be . . . denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof." ME. CONST. Art. I, § 6-A.

The Law Court has stated that the equal protection guarantee contained in this provision is coextensive with that of the United States Constitution. *See Town of Frye Island v. State*, 2008 ME 27, ¶ 14, 940 A.2d 1065, 1069. Accordingly, Maine courts will use "similar methods of analysis" when evaluating an equal protection claim brought under the Maine Constitution. *School Admin. Dist. No. 1 v. Comm'r, Dep't of Educ.*, 659 A.2d 854, 857 (Me. 1995).

The court applies a two-step test to determine whether an equal protection violation has occurred. First, the party challenging the statute must show that similarly situated persons are not treated equally under the law. *See Mahaney v. State*, 610 A.2d 738, 742 (Me. 1992). If this step is met, the court must then determine what level of scrutiny to apply. *See School Admin. Dist. No. 1*, 659 A.2d at 857.

23

If the challenged action "infringes on a fundamental constitutional right, or involves an inherently suspect classification, it is subject to analysis under the strict scrutiny standard." *Id.*, 659 A.2d 854, 857 (Me. 1995). If the government action does not implicate either a fundamental right or a suspect class, then the action need only be rationally related to a legitimate state interest. *Id.*

Here, the denial of Medicaid reimbursement for abortions sought by indigent woman does not infringe upon a fundamental right. *See Harris v. McRae, supra,* 448 U.S. at 316. Similarly, the denial of reimbursement does not discriminate against a traditional suspect class, such as race or religion, which would receive heightened scrutiny. *See Sch. Admin. Dist. No. 1,* 659 A.2d at 857. Instead, the rule operates to discriminate against a class composed of indigent women who desire to obtain an abortion. *See Roe v. Maher,* 432 U.S. 464, 470-71 (1977).

The United States Supreme Court has repeatedly held that indigency is not a suspect classification for purposes of the Equal Protection Clause of the United States Constitution. *Id.* at 471; *Harris,* 448 U.S. at 322-23. The Maine Law Court has implicitly decided likewise for purposes of the Maine Constitution. *See Norris v. State,* 541 A.2d 926, 929 (Me. 1988) (applying rational basis review to an equal protection challenge under the United States and Maine Constitutions claiming discrimination against indigent criminal defendants).[6] Therefore, because Rule 90.05-2(A) neither

---

[6] The Law Court opinion in *Norris,* citing the *Harris* and *Roe v. Maher* decisions, notes that "the United States Supreme Court has repeatedly held that indigency, standing alone, is not a suspect classification." 541 A.2d at 929. The Law Court does not go on to specify that indigency is likewise not a suspect classification under the Maine Constitution, but that conclusion is implicit in the court's denial of the plaintiffs' equal protection claims under both the United States and Maine Constitutions, especially given

24

infringes upon a fundamental right nor discriminates against a suspect class, the court will apply the rational basis test.

The rational basis standard is highly deferential and an action reviewed under this standard bears a strong presumption of validity. *See Doe v. Williams*, 2013 ME 24, ¶55. The burden is on the party challenging the government action to demonstrate that "no conceivable state of facts exists to support the legislative action." *School Admin. Dist. No. 1, supra*, 659 A.2d at 857.

Here, Plaintiffs argue that no rational basis exists to support Rule 90.05-2(A) because the governmental interest identified in *Harris*—promoting childbirth over abortion—is not a legitimate state interest in Maine. Plaintiffs also contend that the regulation bears no rational relationship toward achieving the avowed interest of complying with federal law. This argument relies on the premise that states are free to offer broader Medicaid coverage for abortions that are not reimbursable with federal dollars, and the further premise that it is more costly for the state to withhold reimbursement for abortions than it would be to fully subsidize such procedures with state funds.

However, when reviewing a statute or rule under the rationale basis test, the reviewing court does not seek to determine whether the approach taken in the statute or rule is the wisest decision or the best means of achieving the desired result; such

that the court has said the right to equal protection under the federal Constitution is "coextensive" with that under the Maine Constitution.

public policy questions are to be answered by the legislative and executive branches of government. *See Peters v. Saft*, 597 A.2d 50, 52 (Me. 1991).

DHHS's stated rationale for Rule 90.05-2(A) is to achieve consistency and compliance with federal law. As such, the proper inquiry is not whether the department could achieve compliance while also saving the state money, but whether the rule is rationally related to achieving compliance and consistency. States that participate in the Medicaid program are likely required to provide coverage for abortions, at least to the extent that such services are reimbursable with federal funds. *See Edwards v. Hope Medical Group for Women*, 512 U.S. 1301, (1994) (Scalia, Cir. J.) (noting that Courts of Appeals have "uniformly supported the premise" that "Title XIX requires states participating in the Medicaid program to fund abortions . . . unless federal funding for those procedures is proscribed by the Hyde Amendment"). *See also Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474 (1996) (modifying an injunction to enjoin enforcement of a state constitutional amendment insofar as it prohibited public funds from otherwise being used to provide coverage for abortions reimbursable under the Hyde Amendment.); *Preterm, Inc. v. Dukakis*, 591 F.2d 121, 134 (1st Cir. 1979) ("enjoining implementation of [a Massachusetts statute] insofar as it prohibits state reimbursement for abortions which would qualify for federal reimbursement under the terms of the Hyde Amendment").

To the extent federal law requires it, Rule 90.05-2(A) provides that Maine's Medicaid program will provide coverage for those abortion services that are reimbursable with federal funds. The rule thus has a rational purpose related to

26

achieving a legitimate state interest.

Plaintiffs contend that the Maine Constitution's equal protection provision--"[n]o person shall . . . be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof," ME. CONST. Art. I, § 6-A—provides more expansive protections than the equal protection clause in the United States Constitution. However, the Maine Law Court has said otherwise. *See Green v. Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶21 n.4, 750 A.2d 1265 ("Similar to the due process clauses of the Maine and United States constitutions, the equal protection clauses found in the state and federal constitutions offer coextensive protections.") (*citing School Admin. Dist. No. 1 v. Comm'r, Dep't of Educ., supra*, 659 A.2d at 857; *Choroszy v. Tso*, 647 A.2d 803, 808 (Me. 1994)).

Plaintiffs have not shown that the equal protection provisions of the Maine Constitution compel Defendant to provide MaineCare funding for abortion services beyond those presently covered in Rule 90.05-02(2)(A).

E. Plaintiffs' Due Process and Privacy Claims

In the Third and Fourth Causes of Action set forth in their Complaint, Plaintiffs allege that Rule 90.05-2(A) violates their patients' fundamental rights to privacy and substantive due process as found in Article I, Sections 1 and 6-A of the Maine Constitution. A substantive due process analysis turns on whether the challenged state action implicates a fundamental right. *Doe v. Williams*, 2013 ME 24, ¶¶65-66, 61 A.3d 718. "If state action infringes on a fundamental right or fundamental liberty interest, the infringement must be narrowly tailored to serve a compelling state

27

interest." *Id.* If the challenged action does not implicate a fundamental right or liberty interest, the rational basis test applies. *Id.; State v. Haskell,* 2008 ME 82, ¶ 5, 955 A.2d 739.

The Law Court has determined that "the substantive due process rights of the United States and Maine Constitutions are coextensive," *Doe v. Williams* at ¶ 65, 61 A.3d 718 (*citing Green v. Comm'r of Mental Health & Mental Retardation, supra,* 2000 ME 92, ¶ 13 n.2, 750 A.2d 1265). As a result, the United States Supreme Court's decision in *Harris v. McRae, supra,* regarding a due process challenge to the Hyde Amendment, provides guidance on the Plaintiffs' due process challenge to Rule 90.05-2(A).

This is especially true, given that the effect of the Hyde Amendment upon federal Medicaid funding for abortion services is precisely the same as the effect of Rule 90.05-2(A) upon MaineCare funding for abortion services—each precludes funding except in specified circumstances.

In *Harris,* the Court stated that "although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." *Harris,* 448 U.S at 317-18. The Court then held that the limits on Medicaid funding for abortions contained in the Hyde Amendment do not interfere with a woman's fundamental liberty right to choose to terminate a pregnancy. *See id.,* 448 U.S. at 318.

28

In light of *Harris,* and given that the due process rights established by the United States and Maine Constitutions are coextensive, it cannot be said that Rule 90.05-2(A) infringes upon the due process rights established by article I, sections 1 and 6-A of the Maine Constitution.

Accordingly, the proper test for assessing the validity of the rule is the rational basis test and for the same reasons outlined in the analysis of Plaintiffs' equal protection challenge, the court concludes that Rule 90.05-2(A) is rationally related to a legitimate state objective.

F. Plaintiffs' Declaration of Rights Claim

In the second count or Cause of Action of their Complaint, Plaintiffs allege that Rule 90.05-2(A) violates their patients' rights of enjoying and defending life and liberty, and of pursuing safety as guaranteed by Article I, Section I of the Maine Constitution. (Compl. ¶98.) Plaintiffs assert that, by funding birth-related services but not abortion services, the State is coercing women into carrying their pregnancies to term, is delaying their access to abortion care, and is forcing them to make dangerous sacrifices in order to afford an abortion.

In effect, Plaintiffs' constitutional argument is similar to their statutory argument—that the stated public policy not to restrict the right to abortion means that the state must provide funding to enable indigent women to have an abortion.

In both instances, what the constitution and the statute guarantee is that the government will not restrict, infringe on, limit, or otherwise interfere with, a person's exercise of their constitutional rights. What these provisions do not guarantee is that

the government will provide funding to enable all to exercise their rights regardless of ability to pay. The key distinction is between respecting a right and funding the exercise of the right. That distinction is the basis for the Supreme Court's decision in *Harris v. McRae*, that the funding limitations contained in the Hyde Amendment "imposed no restriction on access to abortions that [were] not already [present]." 448 U.S. at 314.

The Plaintiffs further attempt to distinguish *Harris* by arguing that the Maine Constitutional provision at issue "accords a high priority to the preservation of health." (Pls. Mem. 52.) But the Supreme Court's decision in *Harris*, and before that in *Roe v. Wade*, have accorded the same high priority to protection and preservation of a woman's health. *Harris*, 448 U.S. at 316; *Wade*, 410 U.S. at 153. Moreover, Rule 90.05-2(A) does take risk to health into account, albeit only in extreme instances, in providing MaineCare funding for abortion services when the pregnancy is life-threatening.

For the foregoing reasons, and mindful that the Maine Law Court has "traditionally exercised great restraint when asked to interpret [the Maine Constitution] to afford greater protections than those recognized [federally]," *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 13, 728 A.2d 127 (internal quotations omitted), this court concludes that Rule 90.05-2(A) does not violate Article I, Section 1 of the Maine Constitution.

*Conclusion*

Given the wording of the statutory and constitutional provisions that the

30

Plaintiffs rely upon, and given the Law Court's longstanding deference to federal constitutional precedent in its interpretation of the Maine Constitution, this court cannot find a basis in the Maine Constitution or a Maine statute for compelling the State to provide the MaineCare funding that Plaintiffs seek to have made available to their patients.

The public policy questions raised in this case are valid and significant. In this court's view, however, the recourse and remedy Plaintiffs seek in this case lies with other branches of government.

For these reasons, it is hereby ORDERED AND ADJUDGED AS FOLLOWS:

1. Defendant's Motion for Summary Judgment is granted.

2. Plaintiffs' Cross-Motion for Summary Judgment is denied.

3. Judgment on the Complaint is granted to Defendant, along with any recoverable costs of court as the prevailing party.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

Dated 24 October 2017

_____
A. M. Horton, Justice

31

ATTORNEY FOR PLAINTIFFS:

ZACHARY HEIDEN, ESQ
MAINE CIVIL LIBERTIES UNION FOUNDATION
121 MIDDLE STREET SUITE 303
PORTLAND, ME  04101


ATTORNEYS FOR DEFENDANT:

SUSAN HERMAN, AAG
MONCURE HALLIDAY, AAG
OFFICE OF THE ATTY GENERAL
6 STATE HOUSE STATION
AUGUSTA, ME  04333-0006